DANIEL HAWORTH, Appellee, v. SEEVERS MANUFACTURING COMPANY *et al.*, Appellants. ·

1. **Master and Servant**: DEFECTIVE APPLIANCES: PLEADING: INSTRUCTIONS TO JURY. In an action by an employee against his employers for injuries received through a defective scaffold used in the erection of a building, one of the charges of negligence was that the defendants attempted to manage the erection of the building themselves, instead of employing a skillful foreman or carpenter to do so; and the court instructed the jury that, if they found that this charge was established by the evidence, they should next consider whether this was negligence on the part of the defendants. The instruction was objected to on the ground that the defendants had the right to superintend the work, unless incompetent, and that their competency was not questioned by the pleadings or the evidence. *Held*, that conceding that the defendants had the right to manage the work, if competent, yet their competency was involved in the issue of negligence in failing to employ a foreman, and it was not necessary to specially allege incompetency; and, there being evidence that the defendants permitted the use in the scaffold of a defective board, which occasioned the injury, the instruction was warranted by the issues and the evidence.

2. ———: ———: EMPLOYMENT OF SKILLED WORKMEN. As the law requires that reasonable care shall be exercised to have the work of constructing platforms, on which men are to stand for such work, done by or under the supervision of men that have knowledge of the materials and workmanship necessary for their safety, *held*, that it was not error to submit to the jury the question, whether the defendants were negligent in not employing skilled laborers where the work required such workmen.

3. ———: ———: NEGLIGENCE OF EMPLOYEE IN CHARGE: INSTRUCTION TO JURY. It being alleged that the defendants were negligent in directing the construction of the scaffold, the court, in submitting this issue, instructed as follows: "Should you believe from the evidence that the defendants had employed any person to take charge of the erection of said scaffold, then any act of omission or commission by such person in this employment is as binding on the defendants as if done by themselves, provided you find that plaintiff himself did not

aid in such erection." *Held*, that this was a correct statement of the law, and that the instruction was warranted by the evidence, which tended to show that one of the workmen was employed as superintendent of the work, and that his employment included such details as preparing proper scaffolding to carry it forward.

4. ———: ———: "UNSOUND AND ROTTEN MATERIAL." An allegation that the defendants were negligent in using "unsound and rotten material" in the scaffold, *held*, to be supported by evidence that the board which broke, and caused the injury, was an old pine board, knotty, cross-grained and dangerous.

5. ———: ———: REQUIRING SERVICE IN DANGEROUS PLACE. The court having submitted to the jury the question, whether or not the defendants were negligent "in directing and compelling the plaintiff to go upon the scaffolding," *held*, that this was warranted by evidence that the plaintiff was assigned to work which involved his going upon the scaffold; the word "compelled," as used, meaning nothing more than "ordered" or "directed."

6. Expert Testimony : COMPETENCY OF WITNESS: DISCRETION OF TRIAL COURT. Where the evidence as to the competency of a witness to testify as an expert is very indefinite, the exclusion of his testimony is not reversible error, even though it might properly have been admitted.

*Appeal from Mahaska District Court.*—HON. J. K. JOHNSON, Judge.

MONDAY, FEBRUARY 8, 1892.

ACTION for personal injuries. There was a judgment for the plaintiff, and the defendants appeal.— *Affirmed*.

*J. F. & W. R. Lacy* and *Seevers & Seevers*, for appellants.

*Blanchard & Preston* and *Bolton & McCoy*, for appellee.

GRANGER, J.—The Seevers Manufacturing Company is a copartnership composed of Thomas and H. W. Seevers, and the general business of the firm is the manufacture of steam heaters, iron bridges, and various kinds of machinery, at Oskaloosa, Iowa. About the

twenty-fifth day of March, 1886, in aid of its business, the firm was engaged in the erection of a wooden building near its works, and the plaintiff, who is a boiler maker by trade, and a day laborer, was in the employ of the firm, and working on the building. For the purpose of putting the rafters in position a stage or scaffold was made on the upper joists, that had been put in position, eight feet apart, by laying across them boards sixteen feet long, and generally of one inch in thickness. The plaintiff, while engaged with two others, in putting up the rafters, was standing on a wooden horse about two and one-half feet high, holding rafters, while the others nailed them in place. After the rafters were nailed, he stepped backwards, from the horse to the platform, and onto an old, knotty board that had been placed thereon, which broke, and he fell to the ground, about ten feet, receiving a spinal injury resulting in a paralysis of the lower limbs and the lower part of his body, rendering him unable to stand, and his injuries are permanent. The judgment is for two thousand dollars, which the appellants concede is not excessive if the plaintiff is entitled to recover.

I. The ninth instruction given by the court is as follows:

"9. As to the first of said alleged grounds of negligence on the part of defendants hereinbefore stated, you are instructed as follows: If you find, from the evidence, that the defendants attempted to manage the erection of the building, and did not employ a skillful foreman or carpenter to erect the same, you will next consider whether or not this was carelessness or negligence on the part of the defendants. If, however, you find, from the evidence, that this allegation is not proved, then you need pursue this inquiry no further, but will find for defendants to this extent."

1. MASTER and servant: defective appliances: pleading: instruction to jury.

It is said by the appellants that the court erred in

this instruction, because they were not bound to employ "a skilled foreman or carpenter; that they had the undoubted right to superintend the erection of their own building, unless they were incompetent to perform the duties which devolved upon them;" and it is further said that the issues in the case present no question as to their competency, nor is there testimony tending to support such a claim. The court stated to the jury, in substance, the allegations or grounds of negligence in the petition as follows:

*First.* That the defendants attempted to manage the erection of said building, and did not employ a skilled foreman or carpenter to erect said building.

*Second.* That the defendants were negligent in employing unskilled laborers for work which required skilled workmen.

*Third.* That defendants were careless and negligent in directing the construction of said scaffolding.

*Fourth.* The defendants were careless and negligent in putting, or causing to be put, unsound and rotten material into said scaffolding.

*Fifth.* That defendants were careless and negligent in directing and compelling plaintiff to go on said scaffolding.

*Sixth.* That defendants were negligent and careless in not causing said scaffolding to be properly constructed and supported.

There was evidence tending to establish the following additional facts: That the erection of the building was under the supervision of Thomas and H. W. Seevers, Thomas being presumably in charge; that the boards in the platform were such as Thomas directed to be used; that an old shed had been torn down, by direction of Thomas, and the boards piled up near by; that the board which broke was one of the pile, "knotty," and unsafe for such a purpose; that the platform was made the day before the injury, when

·the plaintiff was not at work on the building; that on the next day he again went to work, and was told to help one Baker, and the following is a part of his testimony:

"When we started to work on that morning, the day I was hurt, they told me to go to work. Harry Seevers told me to go to work with Alec Baker, and we went to the bottom and got all the rafters out, and Alec had the patterns made for them. I would get the two by fours, and Alec would saw them, and, when we got them sawed, we would put them two by two, in their places, and then put them up on the building. *Question.* What direction was given to you about that? *Answer.* I was told to work with Alec Baker, and when he went to put up the rafters of course I had to go up with him. Alec Baker would get on one side, and I would hand him up the rafters, and he would put them up. He would hold one till I got another, and then we had a horse up there. I got on that, and held the rafters in place while he and Rowe Browherd nailed them. Baker would nail one end, and Browherd the other. When I got down off the horse Baker got up and nailed them in the center. There were eight pairs of rafters on the building. I held the rafters up while they were nailed. Baker nailed them. While he was nailing one end I held them in place. I do not remember how the first two were put up, but after that I steadied them while he nailed them. He did all the nailing, all the way through. *Question.* Who told you to help him put them up? *Answer.* Harry Seevers. He got me up there, all the way through. *Question.* How many of them did you get up before you fell? *Answer.* We put them all up. That was the last one, when I fell. When I got through holding up there, and Baker got that nailed, I stepped backwards, off the "horse," and when I stepped on the board there

it broke right through. I stepped off the horse on the board which broke when Alec got through nailing the rafter. After I fell I seen the board that broke was an old board. I had not noticed it before. All the other boards were new. I did not notice any old board but that one which broke with me. It was eight feet long. After I fell some one called my attention to it. The two ends hung by a nail, and I heard some one say, 'Take them down, or they will fall on him,' and of course I paid some attention to it. It broke right in the middle. This old board that broke came from the old shed that we tore down there. Tom Seevers told me to tear down the old shed to make room for materials for the new building, which I did, and laid the old boards in a pile. The shed we tore down was old, and it had the appearance of being an old building. I can not say that the particular board which broke was rotten, only it was knotty, great knots running from the center of the board out both ways, where it broke. It was cross-grained. It was knotty, it was full of knots. There was a knot in the center. *Question.* After it broke you could see it was knotty and cross-grained? *Answer.* Yes, I could see that. I did not know how I fell, I went down so sudden. I found myself lying on my back. When I struck I could not move. My brother, Alec Baker, and Harry Seevers all came to see what was the matter, and raised me up, and I was carried home. I suffered great pain from the injuries.''

The testimony of the plaintiff has strong corroboration throughout, and, in many particulars, is without dispute.

From this statement of the facts and the testimony, with the issues, we may have in view the necessary directions to be given to the jury, and judge of their merits or demerits under the complaints made. We must concede the proposition of law, made by the appellants,

that they had the right to superintend the erection of the building, unless incompetent. There is an allegagation that they were negligent in not employing a skilled workman. With the rule of law, as claimed and conceded, there could be no negligence because of such a failure, unless the appellants were incompetent, and hence the question of the competency of the appellants was involved in the issue of negligence in failing to employ a foreman. We do not think it necessary that the incompetency of the defendants should be specially alleged. With this view of the issues there was certainly evidence on which to base the instruction.

II.    The eleventh instruction is as follows:

"11. The second of the six grounds of negligence alleged and claimed by plaintiff against the defendant is, 'That 2. —: —: employment of skilled workmen: defendants were negligent in employing unskilled laborers for work which required skilled workmen.' If you find, from the evidence, that the defendants did not employ unskilled laborers where skilled workmen were required, then you need pursue this inquiry no further, but will find for the defendants on this point in the issue. If, on the other hand, you find it is sustained by a preponderance of the evidence, then you may next consider whether or not this was negligence on the part of the defendants. Defendants were bound to exercise only ordinary care in procuring labor on their building, and what would be ordinary care depends upon the circumstances proved as surrounding the case. You should take into account the character of the work to be done, the kind of men employed, and, if such care was used by the defendants as an ordinary, prudent man would exercise under the same or similar circumstances, then defendants are not guilty of negligence under this allegation, and you should find for the defendants, to this extent, on this point in issue."

The complaint as to this instruction is that, with

the exception of a competent foreman, skilled workmen were not required to erect such a building, it being, as said in argument, "a mere one-story shed or workshop," and it is said there is no expert evidence that the workmen employed were not competent. There is, however, evidence of others as to the general occupations of the men employed, showing that they were generally engaged in other employments, and from which the jury could believe they were not skilled in the work of such construction, and that a defective platform was the result of such inexperience. It is likely true that the law would not require all the workmen to be skilled; but what it does require is that reasonable care shall be exercised to have the work of constructing stagings and platforms, on which men are to stand for such work, done by or under the supervision of men that have knowledge of the materials, and workmanship necessary for their safety. It is quite evident that there is a misconception of the intended purpose in using the term "skilled workmen," as it is urged that such workmen are not essential for work on such a building as the one being constructed. But, not losing sight of what must have been in the minds of both judge and jury at the trial, we will understand that the skill intended by all was not of the character required for good building, but such knowledge of building as to carry forward the work with safety to the persons engaged, to know what would be a safe platform for such a use, and the method of construction. The result proved conclusively that the platform was not sufficient. Whether or not the defect was the result of negligence, and, if so, that of the defendants, are questions in dispute. There is evidence as to who built the platform, and its insufficiency is demonstrated; and hence the instruction has the support of evidence.

III. A complaint is also made of the twelfth instruction, which is in the following words:

"12. The third of the six allegations of negligence or carelessness on the part of defendant is 'that the defendant was careless and negligent in directing the construction of the scaffold.' If you find, from the evidence, that the defendants, either by themselves or through a foreman or carpenter in charge of the work, did not direct the construction of the scaffold, then you need not pursue this inquiry, and determine whether or not defendants were careless or negligent in so doing. If, on the other hand, you find, from the evidence, that the defendants so directed the construction of the scaffold, then you will consider whether or not defendants were negligent in so doing. Defendants were bound to exercise ordinary care and skill in the construction of said scaffold, for the safety of the employees; that is to say, such care and skill as an ordinarily prudent man would exercise under the same or similar circumstances. If defendants did this, then you should find for them on this point; if not, then to this extent you should find for plaintiff. *You are instructed, in passing upon this, that, should you believe from the evidence that defendants had employed any person to take charge of the erection of said scaffold, then any act of omission or commission by such person in this employment is as binding on the defendants as if done by themselves, provided you find that plaintiff himself did not aid in such erection.*"

The italicized portion is quoted in argument as being erroneous. It is said there is no evidence tending to show that "the defendants employed any person to take charge of the erection of the scaffold." The argument, however, concedes that there is evidence tending to show that they employed one Baker to superintend the erection of the building. But it is said the employments are different. It is likely true they might be different, but an instruction should be viewed in connection with the evidence and facts as to which it is

3. —: —: negligence of employee in charge: instruction to jury.

to serve as a rule or guide for the jury, and we think that if it appears from the evidence in this case that Baker was employed to superintend the erection of the building in question, where he would be immediately engaged with the other employees in the work, and he was so engaged, with the knowledge of the defendants, the evidence would tend to show that his employment as superintendent of the construction or erection of the building included such details as preparing proper scaffolding to carry forward the work. The evidence in the case certainly has such a tendency.

It is further urged that the instruction is erroneous in that it violates the rule whereby a principal is not liable for the negligence of a co-employe or a fellow-servant. It is conceded that the following quotation from Cooley on Torts, page 663, is a correct statement of the law: "We have seen that, in some cases, the master is charged with a duty to those serving him of which he can not divest himself by any delegation to others. He is charged with such a duty as regards the safety of his premises, the suitableness of the tools, implements, machinery, or materials he procures or employs, and the servants he engages or makes use of. Whoever is permitted to exercise the master's authority in respect to these matters is charged with the master's duty, and the latter is as responsible for a want of proper caution on the part of the agent as for his own personal negligence." In Bishop on Non-Contract Law, section 647, it is said: "This duty of providing proper appliances is not a thing pertaining to the service, but it is the master's own. He may employ agents in discharging it, but the law does not deem them fellow-servants, for the consequences of whose neglect he is not answerable to a servant. His neglect of this duty, whether personal or by agent, is his own." In the next section (648) it is said: "The same doctrine applies to the place to work as to the appliances. The

master, as a personal duty, must use reasonable care that the place is safe." See *Cook v. Railway Co.*, 34 Minn. 45, 24 N. W. Rep. 311. With the rule of law settled that the employer is liable for injuries resulting from negligence in providing a suitable place for the work, whether the provision is made by the employer in person or through an agent, the question before us may be disposed of without difficulty. We have held before in this opinion that there was testimony tending to show such an employment of Baker, as superintendent, as to include the preparation of the platform in question, and if so employed, and he was negligent, the employer is not protected under the rule where he is not liable for the negligence of a fellow servant or co-employee.

IV. The thirteenth instruction treats of the liability of the defendants for using, in the platform,

4. ——: ——: "unsound and rotten material." unsound or rotten material, and it is said there is no testimony to that effect. There is, however, an abundance of testimony that the board that broke was "knotty, cross-grained, and dangerous." It was an old pine board, taken from the shanty that was removed to make room for the new building. There is, we may say, no evidence that the board was decayed so as to come within the ordinary acceptation of the term "rotten," but it was unsound, and its strength likely weakened by time and exposure. One definition given by Webster for "rotten" is "not firm or trusty; unsound; defective;" etc. The expression, in the pleadings and on the trial, was evidently used in that sense, and properly so.

V. There is, also, a complaint because the court submitted to the jury, by its fourteenth instruction, the

5. ——: ——: requiring service in dangerous place. question whether or not the defendants were negligent "in directing and compelling the plaintiff to go upon the scaffolding," for the reason that there is no evidence that

he was compelled to go there, other than that he was assigned to the work of putting up the rafters. Baker was engaged in that work, and the evidence shows that the plaintiff was told by the defendants "to work with Alec Baker;" to "help the carpenter." The discharge of the duty thus assigned him involved his going upon the platform. The word "compelled," in the sense used, has no other significance than "ordered" or "directed;" and, in the light of the record, would not be otherwise understood.

VI. As bearing on the question of Baker's being a skilled workman, one Hoffman was a witness, and was

6. **EXPERT testimony: competency of witness: discretion of trial court.** asked: "Have you some knowledge of the carpenter business, so you can judge of the capabilities of a man working at that trade?" He answered that he had a little knowledge of such business, and knew Baker, and had worked with him a little, in 1856, at the carpenter business. He was then asked: "What kind of a workman is he?" The question was excluded, and, while he might have been permitted to answer, there is no reversible error in the ruling. The evidence is very indefinite as to the competency of the witness to testify. Because of a dispute in the abstracts we have been to the transcript to look to the evidence in this respect, and it shows that the opinion of the witness could have been of but trifling, if any, value on the question of Baker's skill as a workman in the construction of buildings. His principal business was that of a pattern-maker, and he did some work in "millwrighting" and building.

VII. Some few other questions are discussed, but they are mainly embraced in the considerations already given, and none of them present errors, if at all, that would justify a reversal. We think the verdict has good support in the evidence, and the judgment is AFFIRMED.

OPINION UPON REHEARING.

## FRIDAY, FEBRUARY 3, 1893.

KINNE, J.—The former opinion in this case will be found above. As the facts are fully stated in the original opinion, we need not set them out herein. After a most careful investigation of the questions involved in the case, we are content with the conclusions reached in the original opinion, and must adhere thereto. The petition charges that the defendants were negligent in attempting to manage the erection of the building, and that they did not employ a skilled foreman or carpenter to erect it. The testimony tends to show that a member of the firm superintended the work on the building. The proposition of law is conceded that, if he was competent, it was not negligence for him to assume the discharge of such a duty. If the person in charge of the work, whether one of the defendants or another, was in fact competent, then there was no negligence in failing to employ one who was competent. What proof was necessary to establish the allegation of the petition of negligence in failing to employ a competent person to superintend the erection of the building? The one fact only that the person in charge was not competent. If the law requires a competent person to be in charge to avoid negligence, the effect of an allegation that the defendants failed to employ a competent person must be understood as alleging that whoever was in charge was incompetent. As the evidence shows that the defendants themselves had the work in charge, the court, in the ninth instruction, properly directed the inquiry of the jury to the question of their competency, regardless of an express averment that the particular person in charge was not competent. Other questions are sufficiently considered in the original opinion. AFFIRMED.