Sullivan v. Mississippi & Missouri Railrord Company.

er who comes into court as complainant, seeking to enforce·
against the defendant an illegal contract.   Defending against,
such a claim,  as an involuntary party to the action, is quite
a different affair from seeking relief in the character of,
plaintiff; and it is unnecessary to refer, perhaps, to any,
authorities to show that the above maxim has no application·
to a case of this description.   1 Story Eq. 76–300.

Reversed.

SULLIVAN v. MISSISSIPPI AND MISSOURI RAILROAD COMPANY.

1. RESPONDEAT SUPERIOR.   The principal is not liable for the damages
   sustained by an employee from the negligence of a co-employee in the
   same general service.
2. STATUTE CONSTRUED.   The act entitled "an act to grant to Railroad
   Companies the right of way " (1853) does not change the general rule
   of law upon this subject.

<em>Appeal from Johnson District Court.</em>

THURSDAY, APRIL 11.

IN December, 1858, the plaintiff filed his petition to recov-
er of defendant damages for severe physical injuries which
he had sustained under the following circumstances :   He
had been employed, with others, on division No. 9, of said
road, by said defendant, for the purpose of passing over
that portion of the track of said road in a hand car, in
advance of the regular train, that the condition of the track
might be ascertained and all obstructions removed.   Whilst
performing this daily duty one morning before daybreak, it
being rainy and dark, he was overtaken by the regular train
of cars, and thrown with great violence upon the earth and
stones, dislocating his hip, bruising and cutting his breast
and head, &c.   It was alleged that this injury was the result

of the negligence of the engineer and other servants in the employ of the defendant.

The defense consists chiefly in a denial of the allegations of the petition. After the plaintiff had closed his evidence on the trial, the defendant moved a nonsuit, upon the ground that it appeared from the pleadings and evidence that the injury sustained by plaintiff was caused, if at all, by the negligence and carelessness of other employees engaged in the same general business. This motion was entertained by the court, under a written agreement between the parties that the question of law raised by the same should be considered and determined without regard to any rule of practice as a ground of objection. This motion was overruled, and a verdict was found in favor of the plaintiff for $1000, upon which a judgment was rendered, and the defendant appeals.

*Lindley & Clark* and *Edmonds & Ransom* for the appellant.

*Smyth, Young & Smyth* for the appellee.[1]

LOWE, C. J.—The important and controlling question in this case arises out of the refusal of the court, upon request, to give as a charge to the jury in behalf of the defense, the third, fourth, fifth and sixth instructions, and the overruling of the motion for a nonsuit.

This motion and the instructions specified raise one and substantially the same question. The decision which we shall be compelled to make of this question so fully and entirely disposes of this case, that the consideration and determination of the other points made in the progress of

---

1. The questions involved in this case were elaborately argued, counsel for appellee examining and reviewing the English, Scotch and American cases upon the subject, and the counsel for appellant relying upon the cases cited in the opinion of the court. Appellee's argument was withdrawn from the files after the determination of the case, and had not been returned when the report was prepared for the press, for which reason no further report is made.

the trial below and assigned for error here will be quite unnecessary.

At the time the injury complained of happened, the plaintiff admits that he was an employee of the defendant, under a contract of service, and alleges that whilst holding this relation he sustained great physical injuries through the negligence of other agents and employees in the service of the defendant. When on the trial, the evidence developed the fact (as the defendant claims that it did) that these several employees were all engaged in the same common business upon terms of equality, the defendant moved for a nonsuit, insisting that the law, under such a state of facts, did not hold the railroad company responsible for damages to plaintiff. This motion being overruled, the same principle of law was embodied in the instructions above designated by numbers, but which were withheld from the jury as not being the law of the case.

As a general rule, the maxim *"respondeat superior"* obtains; and under it the principal is held liable in a civil suit for all damages which third persons may sustain from the wrongful acts of the agent done in the course of his employment, whether the principal authorized it or not. Story on Agency, section 452 and notes. To this general rule there is an exception as well settled and as authoritatively established by the uniform current of authority in this country and England, as the rule itself. That exception is this: that where different persons are employed by the same principal in a common enterprise, no action can be brought by them against their employer on account of injuries sustained by one employee through the negligence of another.

Like the main rule, this exception is founded upon public policy, and had its origin in the idea that the employee has the means of knowing just as well as the employer all the ordinary risks incident to the service in which he is about to engage, and that these, including the perils that might

arise from the negligence of other servants in the same business, entered into the contemplation of the parties in making the contract; on account of which, the law implies, the servant or employee has insisted upon a rate of compensation which would indemnify him for the hazards of the employment. And again the law supposes that the relation which the several employees sustain to each other, and the business in which they are engaged, would enable them better to guard against such risks and accidents, than could the employer. Besides, the moral effect of devolving these risks upon the employees themselves would be to induce a greater degree of caution, prudence and fidelity than would in all probability be otherwise exercised by them.

We do not, however, mean to discuss the reasons for the principle stated. Its wisdom has been recognized and sustained by luminous arguments in Massachusetts, South Carolina, New York, Pennsylvania, Georgia and Illinois, while in other States it is approved with certain limitations and restrictions. For instance, in Ohio it was held that when an employer placed one person in his employ, under the direction of another also under his employ, such employer is liable for an injury to the person of him who is placed in the subordinate situation, by the negligence of his superior. *The Little Miami Railroad Company* v. *John Stevens*, 20 Ohio 415; *C. C. & C. Railroad Company* v. *Keary*, 3 Ohio State, 201. The modification of the principle is maintained with great ability by Judges CALDWELL and RANNEY. But we refrain from expressing any opinion upon the soundness thereof, until a case is made before us calling for an application of the same distinction.

In this case it is conceded that the plaintiff and the engineer of the locomotive, through whose negligence the injury is alleged to have been committed, stood as equals to each other, neither having any power or control over the other. And it is worthy of remark that the same court in Ohio, in the case of *Whaalan* v. *The Mad River & Lake Erie Rail-*

*road Company*, 8 Ohio State 249, has since held, that where' no relation of subordination or subjection existed between the employees, and one was injured by the carelessness of another engaged in the same common employment, that the employer being himself guilty of no fault, would not be responsible for such injury. The facts in that case were not dissimilar, in their principle and application, to the present. In that, as in this case, the plaintiff was a track inspector and repairer, and standing by the roadside when the train passed, the fire tender carelessly threw out a stick of wood and struck him in the eye, which was put out thereby. The court held that they were engaged in the same common business within the meaning of the rule, and neither having any control over the other, the defendant was not liable. The courts in Indiana have gone one step farther, and added still another qualification to the rule or exception stated. See 5 Port. 337, and 7 Ib. 436, where, in in substance, it was held that a railroad company is liable to a servant for an injury occasioned by the negligence of other servants, when the duties of the latter in connection with which the injury happened, were not common, but in different and distinct departments of duty from those of the injured party. Among other grounds taken by counsel for the plaintiff, they insist that the case before the court falls within the above qualification of the rule, unrecognized as it is, so far as we have been able to ascertain by other courts.

We express no opinion now upon this innovation of an established rule, for the reason that whether right or wrong the facts of this case show that it does not fall within the principle contended for, and one indeed quite diverse from the facts that make up the history of the Indiana cases. In the first of these cases, Gillenwater, the plaintiff, was employed by the railroad company to frame and build a bridge on their road across Sugar Creek; and while thus engaged he was requested to proceed with cars of the company to Greenwood, and assist in loading timbers for the

bridge. In their transit to Greenwood the servants of the defendant, who had in charge the running of the train, carelessly run the same off the track, whereby the plaintiff was injured.

In the other case the plaintiff, Fitzpatrick, was employed with others to ballast the defendant's road from a gravel bank, two miles from their boarding and lodging place, and by an agreement with the company they were to be regularly conveyed to their meals and back again to the gravel bank. In passing thus from the place of work to their meals, through the gross negligence of the engineer managing the locomotive, a collision occurred, in consequence of which, the plaintiff's leg was broken.

Now, in both of these cases the plaintiffs were mere passengers at the time the accident occurred, invested, perhaps, with all the rights of other passengers, and certainly wholly unconnected with the running of the train. They were employed, to be sure, in another and distinct branch of the company's business, that of bridge building, and completing the construction of their road, a description of service which did not necessarily or directly connect them with the business of operating the road with a locomotive and trains of cars.

But how was it with the plaintiff in this case? The nature of the service which he contracted to perform related alone to the safe operation of the road. He was to pass over a certain section of the road track, immediately in advance of the train, for the purpose of inspecting its condition and clearing it of obstructions. This precaution was deemed important by the company to avoid accidents and consequent liability as common carriers. The duty of the engineer was to operate the locomotive with its train of cars to the best advantage for the company and the public. To accomplish this object more safely and certainly to all interested, the services of the plaintiff were engaged as track inspector; and although his duties as such were dis-

tinct from and independent of the engineer, yet they were both unquestionably engaged in a common enterprise, and their several duties directed to the same end.

These facts bring this case clearly within the principle laid down in a number of decisions of great respectability. First, the leading case of *Farwell* v. *The Boston & Worcester Railroad*, 4 Met. 49. This was a suit by an engineer against the company for an injury sustained through the negligence of a switch tender, and it was held that he could not recover. There can be no difference in fact or law between the relations which a switch tender and a track-man hold to the engineer.

The cases of *Coon* v. *The S. & U. Railroad Company*, 1 Seld. 492, and of *Whaalan* v. *Mad River & Lake Erie R. R. Company*, 8 Ohio State, 249, in the facts they present are perfectly analogous to the one before us. In each of these cases the plaintiffs were track repairers or inspectors, and were injured through the carelessness of the servants of the company engaged in the management of the passing trains; and it was held in both of these cases that the plaintiffs were not entitled to recover. Quite a number of other cases involving the same principle could be cited if necessary.

We think both the reason of the law and the weight of authority are against the plaintiffs' right to maintain his action in this case.

If he can, we see no reason why the engineer, had he suffered an injury at the same time, caused by the negligence of the plaintiff, (of which he ran a very great risk) should not maintain a like action for his injuries. Because if the evidence showed anything in this case it exhibits as much if not more carefulness on the part of the plaintiff than that of the engineer.

Upon a supposition of this kind we would have two servants engaged in the same general business, each in his own sphere, and without the control of the other, bringing their

several suits against a common employer to recover damages which they had suffered from their own mutual carelessness, and not from any fault of the principal.

The statement of this proposition proves alike its unreasonableness and the soundness of the principle which we have been compelled to recognize in disposing of the main question in this case.

There is one other ground upon which the plaintiff claims to maintain this action, founded upon the session laws of 1853, entitled "an act granting to railroad companies the right of way." The 14th section of this act provides that "every railroad corporation shall be liable for all damages sustained by any person in consequence of any neglect of the provisions of this act, or of any other neglect of any of their agents or by any mismanagement of their engineers, by the person sustaining such damages."

The construction claimed for this section is that the company shall not only be liable for all damages sustained by any individual in obtaining the right of way and locating the line of the road by the civil engineers, but all other damages which may accrue to any one from neglect of steam engineers and other agents after the road is built and being operated, including injuries which one servant may sustain from the negligence of a fellow-servant in the same employment. Now if the legislature intended to give so extended a meaning to this section they would most likely have employed apt words to express such intention. There is nothing in the language of this section to authorize the conclusion that the legislature intended to change the rule of law in respect to the non-liability of the principal for damages suffered by one employee from the negligence of another in the same general service. If such a construction must be put upon it, then two objections lie against the law itself: First, no such object is indicated by the title of the law; and second, it would be partial and not uniform, discriminating against one class of corporations and holding

them responsible for things, and under circumstances, which are excusable under the law, in all other corporations and even in individuals who shall employ two or more servants. Now we are not at liberty to adopt a construction that leads to such consequences, if the act is equally susceptible of another consistent with its title, its validity and its object. When we limit the damages spoken of, to those resulting to third persons in neglecting to observe the *provisions of the act* or any other neglect in executing or carrying out its provisions by the agents of the corporation, we give the section its only true and proper construction.

Judgment reversed.