WILSON v. THE DUNREATH RED-STONE QUARRY CO.

1.　**Master and Servant:** INJURY TO SERVANT: NEGLIGENCE OF
* FELLOW-SERVANT: LIABILITY.　An employer is not liable for damages sustained by an employe from the negligence of a co-employe, notwithstanding he is higher in authority than the one receiving the injury.　(See opinion for authorities.)　And so, in this action to recover for an injury received by an employe through defective machinery constructed and used during the absence of the superintendent and without his direction, but under the direction, as plaintiff alleges, of another employe, *held* that there was no evidence that the other employe, if he did direct the construction and use of the defective machinery, had any authority so to do, and that instructions based upon the theory that he had such authority were unwarranted and erroneous.

Wilson v. The Dunreath Red–Stone Quarry Co.

2.  ———: ———: EVIDENCE: DECLARATIONS OF FELLOW-SERVANT: RES GESTÆ. In an action by a servant for an injury caused by the negligence of a fellow-servant alleged to have been a temporary vice-principal, the declarations of the fellow-servant made before and after the accident causing the injury, and no part of the *res gestæ*, are not admissible to bind the master.

3.  ———: ———: CONTRIBUTORY NEGLIGENCE: EVIDENCE. In an action for an injury received by an employe while riding down a tramway on a car, evidence tending to show that plaintiff was warned of the danger of getting on the car, and that he knew it was a perilous ride, should have been admitted as bearing on the question of his own negligence.

*Appeal from Marion District Court.*—HON. A. W. WILKINSON, Judge.

FILED, MAY 15, 1889.

THE defendant and appellant is a corporation engaged in quarrying and shipping stone from its quarries at Red Rock, in Marion county. E. W. Wilson, the plaintiff, was employed by the defendant as a laborer in said quarries about December 1, 1886. The defendant undertook the construction of a double tramway down an incline for the purpose of running cars thereon to carry off strippings and other refuse from the quarry down in the direction of the Des Moines river, where it was to be dumped from the cars. The intention was to construct the double tramway so that, as one loaded car would be going down, another empty one would ascend the incline. Before the work of constructing the tramway was completed, one Stuart, who was superintendent of the quarry, went away temporarily. During his absence the force of men at work in the quarries rigged up a tackle and snatch-block fastened to a tree to let down loaded cars. An attempt was made to let down two loaded cars at one time by this means. The plaintiff and one Staley were at or near the top of the incline, and just before the attempt was made to let the cars down, one Horner, another employe, who was below, called to plaintiff to go on top of the hill and get a scraper. The evidence is in conflict as to what

Horner directed the plaintiff to do with the scraper. The plaintiff claims that he was directed "to go on top of the hill and get the scraper, put it on the car, and come down." Other witnesses testified that Horner directed the plaintiff to throw the scraper down over the bluff. The plaintiff brought the scraper to the upper end of the tramway, put it on one of the cars, and he and Staley got on the cars and commenced to make the descent. When the weight of the cars came upon the tackle, rigged and fastened to the tree, the pin in the snatch-block broke, the cars descended the incline at great speed, which resulted in their jumping from the track, and greatly injuring the plaintiff. The action is founded upon the alleged negligence of the defendant in using defective and dangerous machinery and appliances, by reason of which the plaintiff was injured. The defendant, by its answer, denied that any defective machinery or appliances were in use by its orders, and alleged that the plaintiff was chargeable with contributory negligence. There was a trial by jury, which resulted in a verdict and judgment for the plaintiff. Defendant appeals.

*C. H. Robinson, Stone & Gamble,* and *Kauffman & Guernsey,* for appellant.

*Hays Bros.,* for appellee.

ROTHROCK, J.—I.   It is conceded that the accident happened by reason of the breaking of the pin in the snatch-block, and that the pin was defective in that it was so much worn as to be insufficient to withstand the weight of the descending cars.   One of the main points in controversy is whether the snatch-block and rigging were put in position under the orders of any one who stood in the relation of vice-principal to the defendant.   The plaintiff claims that Horner, the man who directed the scraper to be brought or thrown down, stood in the place of the company, and that he directed the construction of the appliance which caused the

1. MASTER and servant: injury to servant: negligence of fellow-servant: liability.

injury. On the other hand, the defendant insists that Horner was a mere laborer, and engaged in the same general service with the plaintiff. There is no dispute that Stuart was the superintendent of the quarries, and that one Washer was the foreman under Stuart. But Horner was an employe who worked wherever he was directed. He had charge of the tools, and kept the time of the men. It is true that at times he may have given direction to some of the employes in regard to the work at which they were engaged. But there is no evidence that he had any authority at any time to direct the construction of machinery, or to purchase tools, or make selection of appliances to be used to facilitate the work. In such case, even if it be conceded that he was foreman of the gang of laborers in the absence of Stuart and Washer, he was nevertheless a fellow-servant, and his principal is not liable for damages sustained by an employe, from the negligence of a co-employe, notwithstanding he was higher in authority than the one receiving the injury. *Sullivan v. Railway Co.*, 11 Iowa, 421; *Peterson v. Mining Co.*, 50 Iowa, 673; *Troughear v. Coal Co.*, 62 Iowa, 576; *Foley v. Railway Co.*, 64 Iowa, 644. And see Wood, Mast. & Serv., sec. 425.

As we have said, it is not claimed that the defective snatch-block was put in position for use by the direction of the superintendent, nor by Washer. It is claimed, however, that, as both were absent, Horner acted in the place of the superintendent, or, in other words, acted as and for the defendant, and that the snatch-block was used by his direction. And the jury all through the instructions given to them by the court were charged upon the theory that there was evidence from which such a finding could be made. We do not think these instructions were proper under the evidence, in view of the repeated decisions of this court as to the law applicable to cases of this character. The seventeenth paragraph of the charge to the jury is as follows: "It was the duty of the defendant to exercise reasonable care and prudence to protect the men who were employed by and working for it from injury; and if an

injury to one of their employes resulted from the carelessness of the defendant's superintendent, or their servant, having control, direction and management of its business, machinery and appliances, then the company is liable unless the person so injured has contributed to said injury by his own negligence." It is enough to say of this instruction that it is erroneous, because there is no evidence that Horner had authority to direct what machinery or appliances should be used. He neither had the authority of selecting, nor the power to put machinery in place. And we may say further that there is no sufficient evidence that Horner had any agency whatever, in fact, in putting the defective snatch-block in use.

II.   Certain witnesses were allowed to testify to declarations and statements made by Horner relating to the snatch-block and its use. These statements were made before and after the accident, and were in no sense a part of the res gestæ. This evidence was objected to by defendant, and the objections were overruled. The evidence was improper. The declarations or admissions of an agent or employe, made at times far removed from the act to which they relate, are incompetent as evidence. *Lucas v. Barrett*, 1 G. Greene, 510; *Verry v. Railway Co.*, 47 Iowa, 549; *Treadway v. Railway Co.*, 40 Iowa, 526; *Hakes v. Myrick*, 69 Iowa, 189. There are many objections made to the several parts of the charge given by the court to the jury, which we do not deem it necessary to determine. As we have said, all of the instructions are based upon the idea that there was evidence from which the jury might find that Horner was a vice-principal, and represented the company as such. We think there is no such evidence, and the instructions were therefore erroneous.

III.   Much of the argument of counsel for appellant is to the effect that the court erred in not sustaining a motion in arrest of judgment based upon a variance between the averments of the petition and the evidence

2. ——: ——: evidence: declarations of fellow-servant: res gestæ.

introduced upon the trial.    We need not determine this question.    An amendment to the petition was filed, by which it is claimed the alleged defect was cured.    There is a dispute between the parties whether the amendment was filed within the time and with leave of the court. We need not determine this question.    It will not arise upon a new trial.

IV.    In view of a new trial it is proper that we should briefly notice one other alleged error.    It is a

8. ——: ——: contributory negligence: evidence.

disputed fact in the case whether the plaintiff was directed by any one to ride down the tramway on one of the cars, and whether he was warned by the bystanders that the ride would be dangerous.    In the cross-examination of the plaintiff as a witness the following questions were propounded to him by the defendant's counsel:    "I will ask you if you were not warned by more than one of your co-employes that it was dangerous to ride down on that car?" and "I will ask you if you did not, when you got into that car, know or have reason to know that it was a dangerous trip to make,—a dangerous ride?" Objections to these questions were sustained.    The objections should have been overruled.    If the plaintiff was warned of the danger, and knew that it was a perilous ride, these facts would have been an important consideration, as bearing upon the question of contributory negligence.    We refer to this because more than one witness testified that the plaintiff was warned not to ride down on the car, and one of these witnesses stated that the plaintiff "said he was going to ride down or break his damned neck."    For the errors above pointed out the judgment will be

REVERSED.