CAROLINE FOSBURG, Administratrix, etc., v. THE PHILLIPS FUEL COMPANY, Appellant.

**Master and Servant:** NEGLIGENCE. The employer is not bound to warrant the safety of the working place. He need but use reasonable skill and care and make it reasonably safe.

**Vice Principal:** FELLOW SERVANT. A pit boss controlled the operation of the mine. He had power to employ, discharge and direct. He was not bound to personally examine and repair defects in mine chamber roofs. He sent a common but experienced laborer to repair them. The latter's negligence killed another laborer hired by the pit boss. *Held,* the roof repairer was a fellow servant of the dead man and not a vice principal, and the mine owner was not liable for the killing.

**Construction of Statute.** Code, 2456 (McClain's), does not require entries in mines to be propped with timbers or other materials.

*Appeal from Wapello District Court.*—HON. E. L. BURTON, Judge.

TUESDAY, DECEMBER 18, 1894.

The plaintiff is administratrix of the estate of Charles Fosburg, deceased. The defendant is a corporation, and is the owner of an extensive coal mine in Wapello county. The deceased was a coal miner, and

was killed in the defendant's mine by the falling of slate from the roof of one of the entries in the mine. The action is to recover damages for the death of Fosburg, and it is founded on the claim that the defendant is liable by reason of negligence. The defendant denies the averment of negligence, and claims that it is not liable, because the deceased was chargeable with negligence which contributed to his death. There was a trial by jury, and a verdict and judgment for the plaintiff. Defendant appeals.—*Reversed.*

*McElroy & Roberts* for appellant.

*Coen & Siberell* for appellee.

Rothrock, J.—I. Fosburg was killed in the forenoon of the twenty-fifth day of July, 1891, by a fall of slate in one of the entries of the mine, and while he was engaged in carrying some timbers with which to lay a track to enable him to mine coal in a certain room in the mine. The mine had not been in operation for some three months, because of a general strike among the miners. Work was resumed some two or three. days preceding the accident. Deceased was an experienced coal miner. He had been engaged in that business in this state for some eleven years previous to the resumption of work in defendant's mine. Some two or three days prior to the death of Fosburg, his son made application at the mine for employment for himself and his father. He was promised work, and on the morning of the day of the accident they went to the mine, and notified the pit boss of their readiness to begin work. The room in which it was intended the deceased should work required cleaning up before he could commence the work of removing coal from it. The cleaning up of the room was no part of the work of a miner. That duty devolved on the coal company, but

it was agreed that deceased should clean up the room, for which he was to be paid what it was worth. The reason of this arrangement was that coal miners' wages are not reckoned by the day, but by the quantity of coal which they mine. The deceased went to the room assigned him at about 7 o'clock in the morning, and went to work cleaning it up and laying a track to and in it, and continued at work until about 10 o'clock of the same day, at which time, while passing along the entry towards his room, with a timber under each arm, and at a point thirty or forty feet from his room, a large piece of slate fell from the roof of the entry, and crushed him. To the end that the principal ground for reversal of the judgment may be understood it is proper to state here that John Evans was the pit boss. He employed the deceased, and it is conceded that he had general control of the business of the plaintiff in all matters relating to the operation of the mine. He was advised before the accident that the entry was unsafe. There is a conflict in the evidence as to when that fact became known to him. Some of the evidence is that it was one or two days before the accident; other evidence is to the effect that it was about 6 o'clock on the evening before the accident. At the time when Evans directed the deceased where to go to work he called to one of the employes of the company, named Berchael, and ordered him to go to the place where the accident occurred, and pull down the loose slate from the top or roof of the entry. Berchael obeyed the order, and commenced working at the slate overhead in the entry with the purpose of taking down what was loose or dangerous, and continued at his work for about two hours, when a part of the slate came down, and fell upon him, and injured him so that he was unable to continue the work. He left his tools by the side of the entry, and went away

from the mine, being so injured that he was confined to his bed for several days. While he was working at the slate, and before he was injured, he notified Fosburg that it was not safe to pass along the entry at that place. After Berchael left the place, Fosburg attempted to pass through the entry where Berchael had worked, when a large mass of slate fell upon him, and he was instantly killed. It appears that the entry at the place of the accident was not high enough to permit timbers to be put in and allow the passage of mules along the track while removing the coal from the rooms.

Upon the question as to the duty of the defendant in reference to keeping the roof in a reasonably safe condition the court instructed the jury as follows: "(7) The defendant was not bound to use more than ordinary care; but it was bound to use such care. As you have been told, ordinary care is such care as a man of ordinary prudence and care would observe under like or similar circumstances. (8) If you find that the death of Fosburg was caused by the negligence of a coemploye, then the plaintiff cannot recover in this case. Coemployes are those engaged in the same general business, working to the accomplishment of the same general end. Generally the man who mines the coal and he who labors upon the roof way are coemployes and fellow workmen. (9) It was the duty of the defendant company to keep the entry complained of in good repair, and the roof in a reasonably safe condition. Being a corporation, it could only discharge this duty through employes. Now if you find that the defendant devolved this duty on A. J. Evans, the pit boss, and gave him the right to employ and discharge workmen, and to direct them as to what they should do, then the said Evans would not be a fellow workman with Fosburg, but a vice principal; and if you find that he was

negligent in not seeing to and having the roof put in a reasonably safe condition before the accident, then his negligence would be the negligence of the defendant; and if you further find that from his want of care Fosburg was killed, then your verdict should be for the plaintiff. (10) If you find that Evans was, by the defendant company, wholly intrusted with the care of said entry and other entries in the mine, and had the right to employ and discharge workmen, and to direct them as to what they should do, and you further find that he was negligent in his duties and in the discharge of them, and that such negligence caused the death of Fosburg, then such negligence would be the negligence of the defendant. And if you further find that Evans did not attend to the duty of looking after said roof, as claimed by plaintiff, but intrusted it to Berchael, and Berchael was negligent in what he did, then he would not be a coemploye with Fosburg; and if you further find that his negligence caused the death of Fosburg, then such negligence would be the negligence of the company." Appellant contends that the part of the tenth paragraph of the charge which, in effect, submits to the jury the question whether the negligence of Berchael was the negligence of the company, is erroneous. It will be observed that the instruction is not based on the thought that Evans, the representative of the company, may have been negligent in employing Berchael and directing him to perform the work of detaching the loose slate from the roof of the entry. There was no evidence offered which authorized any such a finding. On the contrary, it appears that Berchael was a man aged fifty-five years, and had followed the occupation of coal mining from the time he was nine or ten years old, and was experienced in the matter of repairing roofs. There is nothing in the evidence which tends to show that Evans was charged with a personal duty to

examine and repair all defects in the roofs of all the mine. On the contrary, it is plain that it could not be done by one man. The mine was extensive. There were several miles of entry, and over seventy-five rooms. It ought to be apparent from these facts that when Evans directed Fosburg to clean up the room and Berchael to take down the slate, the two employes were on an exact equality; and the company was no more liable for the negligence of one of them than it was for the other. Berchael was a common laborer, and had no general authority or duty to perform, delegated to him by Evans, which devolved upon Evans to execute. In the very nature of the case, Evans could not at the same time be present throughout the mine to direct the work of all the employes. Cases cited by counsel for appellee, holding that where authority is delegated to an employe the employer is liable for his negligence, are not applicable to such a state of facts as this case presents. And the instruction under consideration is erroneous both as to the law and the fact. The error of fact is that Evans "did not attend to the duty of looking after said roof,     *     *     *     but intrusted it to Berchael." The roof had been examined, and Evans knew it required attention, and he sent Berchael to remove the loose slate, with no more delegation of authority than he gave to any other common laborer in the mine. That such an employe as Berchael was shown to be in this case is not a vice principal while so engaged is the law, as established by an almost unbroken line of authority. *Troughear v. Coal Co.*, 62 Iowa, 576, 17 N. W. Rep. 775; *Foley v. Railroad Co.*, 64 Iowa, 644, 21 N. W. Rep. 124; *Benn v. Null*, 65 Iowa, 407, 21 N. W. Rep. 700; *Wilson v. Dunreath Stone-Quarry Co.*, 77 Iowa, 429, 42 N. W. Rep. 360; *Mining Co.*

*v. Kitts* (Sup. Ct. Mich.), 3 N. W. Rep. 240; Whart. Neg., section 229; Thomp. Neg., p. 1031; Bish. Noncont. Law, section 665. The contention of appellee appears to be that the duty of an employer to furnish a safe place to work, and to furnish him with safe tools and appliances with which to perform the labor, is absolute. This claim is rightly qualified by the instructions above set out by the thought that this requirement is fulfilled if the defendant used ordinary care and skill to make the place reasonably safe. The employer is not required to warrant the safety of the working place. His undertaking is that he will use reasonable skill and care to make the place reasonably safe. *Coal Co. v. Young* (Ind. Sup), 20 N. E. Rep. 424; Wood, Mast. & S., section 410.

II. There being no evidence that Berchael was other than a coemploye in the same common service with the deceased, the defendant was not liable for his (Berchael's) negligence, if such negligence was shown. *Sullivan v. Railway Co.*, 11 Iowa, 421; *Peterson v. Mining Co.*, 50 Iowa, 673; Wood, Mast., & S., section 425.

III. There are other questions discussed by counsel, which do not require special consideration. It is claimed that the third paragraph of the charge to the jury is erroneous. Considered alone, it is not technically correct, but, when construed in connection with the whole charge, the error was without prejudice.

IV. It is averred in the petition "that said defendant had negligently allowed said roof to become dangerous, and had wholly neglected and failed to support said roof with props or other support, as by law provided, and as is proper, usual, and customary in coal mines, for the protection of persons passing through said entry." Counsel for appellee refer to section 2456 of McClain's Code, and claim that precautions are therein required additional to the

requirements of the common law. It is as follows: "If the mine is a slope or drift opening the escape shall be * * * provided with safe and available traveling ways and the traveling ways to the escapes in all coal mines shall be kept free from water and falls of roof." This statute appears to have been enacted for the protection of miners in case of accident, and to require open and unobstructed means of escape. It does not provide that all entries in the mines shall be propped or roofed with timber or other materials. The evidence shows that the plaintiff's mine was protected as is usual and customary in coal mines. The court below made no mention of this statute in the instructions to the jury, and plaintiff did not make any claim that the same was applicable to the case by the way of requests to charge. We have not considered the question as to whether the plaintiff failed to show by sufficient evidence that the deceased was free from contributory negligence, nor whether Berchael was negligent. We reverse the case on the ground that, conceding the latter's negligence, the defendant is not liable, because it was the negligence of a mere colaborer.—*Reversed.*