## JOHN MITCHELL, etc., Respondent, v. WABASH RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, December 23, 1902.

1. **Evidence:** CONSTRUCTION OF IOWA CODE. In the case at bar, the evidence shows that the respondent was not engaged in the operation of a railway, but in the reconstruction of an old and theretofore abandoned railway track, preparatory to a resumption of its use as a railway, and the provisions of section 2071 of the Iowa Code do not apply to the case.

2. **Master and Servant:** SAFE APPLIANCES. It is the duty of the master to furnish the servant reasonably safe appliances and tools with which to work.

3. **Practice Trial:** PRACTICE, APPELLATE. Where a case is tried on the theory that appellant was liable if it furnished respondent with a defective car, the appellant will not be permitted on appeal to insist that the respondent should have been held to strict proof of the allegation in the petition that appellant built the defective car at its own shops.

4. ———: ———: PARTIES ARE BOUND BY ACTION IN TRIAL
COURT. Where the instructions for respondent told the jury in
effect that if a car was made of brash and brittle wood and was
not reasonably safe for the purposes for which it was long used
when loaded with an ordinary load, and for this cause broke down
and injured the employee of the appellant, then the fact that it
was overloaded did not absolve appellant from liability, and counter
to this the jury were instructed for appellant, that if the car was
reasonably safe when not overloaded, but was overloaded and broke
down from this cause, that respondent could not recover: *Held,*
that, appellant adopted respondent's theory of the law by its counter
instruction and can not be heard in an appellate court to complain
of the error, if it be error, which it adopted and acted upon at the
trial.

5. **Excessive Damages:** VERDICT, WHEN SET ASIDE: PASSIVE,
PREJUDICE: PRACTICE, APPELLATE. Where a trial judge re-
fuses to set aside a verdict which is 'claimed to be excessive, the
appellate court will affirm its action unless it is manifest that the
jury were actuated by passion or prejudice.

Appeal from Audrain Circuit Court.—*Hon. Elliott M.
Hughes,* Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

The substantive allegations of the amended petition
—on which the cause was tried—are that plaintiff in
April, 1899, was employed by the defendant as a com-
mon laborer; that he was put to work with other em-
ployees of defendant on the reconstruction of an old
and abandoned piece of railroad near Bussey in the
State of Iowa; that he was inexperienced in such work;
that after having worked on the reconstruction of the
road for about five days, he was directed by the section
foreman, along with eight or ten other inexperienced
laborers, to take a push car and move some old steel
rails; that in obedience to the order the push car was
loaded with the old rails and pushed along for a short
distance, when it broke down and one of the rails fell
upon the plaintiff's ankle and severely and permanently
injured it. The negligence alleged is that the defendant

constructed the push car out of brash, unsound and insufficient timber, and that from the inexperience of the employees put to load it, and by the permission of the section foreman, it was overloaded; that it broke down by reason of faulty construction.

The answer alleged that under the laws of Iowa, the plaintiff and other laborers working with him and the section boss were fellow-servants; alleged that the injury, if any, to plaintiff was occasioned by the negligence of plaintiff and his fellow-servants in overloading the push car; alleged that prior and subsequent to the injury, the plaintiff was afflicted with rheumatism and that his injuries have been complicated on account of said disease, and not on account of the injury, if any, received by the breaking down of the car, and denied generally all other allegations not specifically admitted. The reply was a general denial.

Plaintiff's evidence tended to prove that he was raised on a farm, was about nineteen years old at the time of the accident, and had never before worked on a railroad; that he had worked five or six days on the road for defendant before he was injured, but had not used a push car before the injury; that on the morning of the injury, he with eight or ten other young men employed by defendant, were told by the section boss to take a push car and move some old steel rails that had been torn up and scattered along the roadway; that the push car they were told to use looked like a new car and was painted; that he did not inspect the car; that he and his co-employees took the car, pushed it to the old rails and loaded it with them; that in order to move the car it had to be pushed along the track by the men, some at the end and some at the side of the car; that he took a position at the side of the car and was helping to push it along the track. When it had been moved a short distance, one of the sills which supported the platform or bottom of the car broke in two and some of the rails fell off, one striking plaintiff on the ankle and inflicting the injury; that the sill that broke was a light, brittle piece of wood, either partially decayed or taken

from an old dying tree, and was unfit for the purpose for which it was used, and would bear only from one-third to one-fourth the weight of a sound piece of wood of the same size, and that its defects could have been easily detected from its weight, or from boring into it or working it or from inspection; that there were twenty rails on the car when it broke down and that sixteen of such rails was an ordinary load for a push car; that plaintiff's fellow-servants who assisted in loading the car were inexperienced in loading such cars and that the section boss gave no direction as to the number of rails that should be loaded on the car, but was near by when it was loaded.

In respect to the making of the car, John Mitchell (another person than the plaintiff, but testifying as a witness for the plaintiff) swore that the defendant had all of its push cars built at Moberly, Missouri, and that he built them and that he supposed he built the car that broke down, but did not know as he was not at Bussey when, or after the car broke down; that he built push cars that were sent by defendant to Iowa to be used in the reconstruction of that piece of road; that the defendant had two push cars that he did not construct, but he did not know where they were.

In respect to the injury, the evidence is that plaintiff's ankle was lacerated, bruised and badly sprained; that he was treated in the defendant's hospital at Moberly, Missouri, for five or six months, and was lame when he left the hospital and had continued lame; that the sprained ankle was larger than the other one; that it will take a long time to get entirely well and possibly the injury is permanent, and that there was evidence of injury to the ankle bone, and that the injury prevents the plaintiff from walking in the natural way, and that the joint will always be weaker on account of the injury and more liable to disease and easier hurt.

On the part of defendant, the evidence of the physician who treated plaintiff while in the hospital was, that no bones were broken; that the ankle was lacerated and

seriously sprained; that a short time after he entered
the hospital a rheumatic condition developed in plain-
tiff's wrists and elbow and involved his ankle joint
and retarded his recovery from the injury; that sprains
of the ankle joint are of a serious character and that it
takes time for recovery, but will get well if no bones are
crushed, and that there was no reason why plaintiff
should not recover from the injury; that the character
of rheumatism that plaintiff developed would retard
his recovery from the injury; that after the injury the
plaintiff had attended dancing parties in his neighbor-
hood and had participated in the dancing.

Defendant put in evidence section 2071 of 1897,
Iowa Code. The decisions of the Iowa Supreme Court
in Malone v. R. R., 65 Iowa 417; Smith v. R. R., 59
Iowa 73; R. R. v. Foley, 64 Iowa 644, and Matson v. R.
R., 68 Iowa 22.

For plaintiff the court gave the following instruct-
ions:

"By the term negligence used in these instructions,
is meant the want of that degree of care that an ordi-
narily prudent person would have exercised under the
same circumstances.

"The jury are instructed that 'ordinary care' as
mentioned in these instructions, depends upon the cir-
cumstances and facts of each particular case or situa-
tion with reference to which the term is used. It is
such care as a person of ordinary prudence and caution
would usually exercise in the same situation and cir-
cumstances.

"The court instructs the jury that under the evi-
dence in this cause John Mitchell is a minor, and that
Thomas Mitchell was duly appointed the next friend of
the said John Mitchell.

"The court instructs the jury that plaintiff had a
right to assume that the car furnished for his use by
the defendant was reasonably safe and sufficient for the
purpose of handling steel rails, and it was not incum-
bent on plaintiff to search for hidden defects in said

car, but it was the duty of the defendant to use reasonable care, diligence or caution to have said car in a reasonably·safe condition for use.

"If you believe from the evidence that the car mentioned in the evidence and in the petition was, at the time it is alleged the plaintiff was injured, in a defective condition and not reasonably safe, and that the agents or servants of defendant, whose duty it was to furnish, inspect or repair such cars, knew or by the exercise of reasonable diligence might have known the condition of said car, then such knowledge is knowledge of defendant, and such neglect or failure to obtain such knowledge is the negligence or failure of defendant.

"The court instructs the jury that if you believe from the evidence that on or about the 18th day of August, 1899, John Mitchell, the plaintiff, was in the employ of defendant, and that while in the discharge of his duties as such employee he was, without carelessness on his part which contributed directly thereto, struck and injured by a rail falling from defendant's car because said car was weak, defective and not reasonably safe, then your verdict will be for plaintiff, if you believe the weak, defective and unsafe condition of said car was unknown to plaintiff and could not have been known by ordinary care and caution on his part, and that said condition of said car was known to defendant or might have been known to defendant by reasonable diligence and inspection on its part.

"The court instructs the jury that it is the duty of defendant to supply its employees with cars in a reasonably safe condition, and it is the duty of said defendant in constructing its cars for the use of its employees to exercise ordinary care and skill in constructing the same, and in selecting the materials with which to construct and build said cars; and in this cause if you believe defendant failed or neglected to discharge these duties above specified, and in consequence of such neglect the car broke down and a rail on said car fell upon and injured the plaintiff while the said plaintiff was in

the exercise of ordinary care, then the verdict will be for the plaintiff.

"The court instructs the jury that if you believe from the evidence that on or about the 19th day of August, 1899, plaintiff was in the employ of defendant and was ordered by the foreman of defendant to lift and place upon a truck or push car, used by defendant, a number of steel rails, and while so employed, and whilst said car was being loaded and pushed over defendant's track, said car and truck gave way, broke and fell, causing a steel rail to fall from said car upon the plaintiff and injured him, then your verdict will be for the plaintiff, if you believe from the evidence that said push car gave way and fell because the same was defective and constructed of improper, unsuitable and insufficient material, and not reasonably safe for an ordinary load, and that defendant knew or might, by the proper inspection or by the exercise of ordinary care, have discovered and known the condition of the car.

"The court instructs the jury that if you believe from the evidence that the rubble car was made of brash, brittle, weak and unsuitable material and not reasonably safe for the purposes for which it was being used, when loaded with an ordinary load, and for this cause the said car broke, then the fact (if it be a fact) that it was overloaded at the time it broke down does not absolve the defendant from liability.

"The jury are instructed that if you find for plaintiff you will, in assessing the damages, take into consideration the physical condition he was in before the injuries in question, the physical pain and mental anguish he has suffered occasioned by said injuries, and the physical pain and mental anguish, if any, you believe from the evidence he is likely to suffer in the future because of said injuries; and in addition to this, you may also consider to what extent, if any, plaintiff's capacity for earning a livelihood after his majority—to-wit, after he arrives at the age of twenty-one years—will be impaired by said injuries,

and you will return a verdict for him in such sum as you believe to be just and reasonable, not exceeding five thousand dollars.''

To the giving of which instruction defendant objected and excepted.

And for the defendant the court gave the following:

''The court instructs the jury that there is no evidence in this case that on account of plaintiff's infancy and inexperience he was unable to perform the service required of him in defendant's employment, or that the men employed and working with him were incompetent to do the work, or that the defendant or its agents were negligent in the employment of any of the men working with the plaintiff; and you are further instructed that the nature of the work done by plaintiff did not require of defendant any instruction from it in his duties.

''The court instructs the jury that the defendant is not an insurer of the safety of plaintiff in and about his work, and that defendant was not required to furnish an absolutely safe car; that all defendant is required to do is to furnish a reasonably safe car for the uses for which it is to be used when properly loaded and not overloaded, and if you find that said car was reasonably safe when properly used and when not overloaded, then plaintiff can not recover.

''The court instructs the jury that you can not presume or infer negligence, nor that the car was defective, from the fact that it broke down and that plaintiff was thereby injured; but plaintiff must prove to your reasonable satisfaction, by the greater weight of evidence, that said car, when under a sufficient load of rails, was not safe for the purposes for which it was used, and that plaintiff was injured in consequence thereof.

''The court instructs the jury that although you may believe from the evidence in the case that said timber which broke was of brash or brittle wood, yet if such condition could not have been discovered by ordi-

nary inspection on the part of defendant and its agents, and if you find this was the only defect in said car, then defendant is entitled to a verdict.

"The court instructs the jury that before the plaintiff is entitled to recover in this cause he must establish, by the greater weight of the evidence given in the case, that he was injured by reason of the negligence of the defendant in failing to furnish him a reasonably safe car upon which to haul rails when not overloaded, and if he has failed to do this, then the verdict must be for the defendant.

"The court instructs the jury that if you find that said car was reasonably safe for the purpose for which it was used when properly loaded, and that said car broke and injured plaintiff as result of being overloaded by plaintiff and fellow-employees, then the verdict must be for the defendant.

"The court instructs the jury that although you may believe from the evidence in the case that said car contained a piece of brittle or brash wood, yet if you find that it was reasonably safe for an ordinary load and that plaintiff or his fellow-workmen overloaded it and as a result of the overloading it broke and plaintiff was thereby injured, then he can not recover and you will return a verdict for the defendant.

"The jury are instructed that under the law of the State of Iowa in evidence in this case, the plaintiff and his boss or foreman, Tilger, were fellow-servants, and although you may find from the evidence in this case that the push car in question was overloaded by the order of said Tilger, and plaintiff was injured thereby, yet you are further instructed that defendant is not liable in this action by reason of said order of said Tilger which resulted in the overloading of said car to plaintiff's injury.

"If the jury find that the car in question was reasonably safe for the purposes of hauling rails thereon when not overloaded, and that plaintiff with his fellow-workmen did overload said car, by reason of which it

broke, causing the rails to fall therefrom and strike and injure plaintiff, then the verdict must be for the defendant.

"The court instructs the jury that if they find from the evidence in this case that at the time and place here in question the plaintiff, together with the defendant's section foreman and other employees of the defendant then and there working with said foreman, undertook to load rails upon a push car more than said car was built to carry, if constructed with ordinary care as to the material thereof, and that after said rails were placed upon said car by plaintiff and said foreman and said section men, the weight of said rails broke the car, by reason of overloading said car, whereby said rails then and there fell and injured plaintiff, then they are instructed that the plaintiff can not recover in this action, and your verdict must be for the defendant.

"The court instructs the jury that the defendant is not liable for any damage to plaintiff on account of rheumatism or by reason of any neglect to give the injury proper treatment, or on account of improper use of the injured limb; and if you should find for the plaintiff, it is your duty to allow him only for injury and damage such as is directly due to the hurt received from the rails striking him, and not for what is due to any other cause."

And refused the following:

"The court instructs the jury that under all the evidence and the pleadings in the case the plaintiff can not recover.

"1. The court instructs the jury that there is no evidence in this case that the defendant built the car which was being used by plaintiff at the time of his injury, nor is there sufficient facts proven from which you can infer that defendant built the car.

"2. The court instructs the jury that it devolves upon the plaintiff in this case to prove: First, that the defendant made the car in question; second, that it was constructed of weak and defective material; third, that it was not reasonably safe when used under an ordi-

nary load; and, fourth, that plaintiff was injured as the result of said car being defective, and unless plaintiff has done so, you will return a verdict for the defendant. On the other hand, if you find that said car was defective, and that such defects could be discovered by an ordinary inspection of the same by persons working with the car, and that plaintiff and those with whom he worked, including his boss or foreman, did not discover such defects, when they could have done so, and as a result thereof plaintiff was injured, then plaintiff can not recover.''

To which refusal defendant objected and excepted.

The jury found for plaintiff and assessed his damages at $2,500. A motion for new trial was filed and overruled. Defendant appealed.

*George S. Grover* and *George Robertson* for appellant.

(1) The demurrer to the evidence should have been sustained. 3 Elliott on Railroads, secs. 1309 and 1366, pp. 2064 and 2133; Railroad v. Mase, 63 Fed. Rep. 114; Bailey on Master and Servant, pp. 5, 17, 27, 31, 180, 202, 913, 914; Schroeder v. Railroad, 41 Iowa 344. (2) The instructions given are in hopeless conflict with each other. Conway v. Railroad, 50 Iowa 465; Hawes v. Railway, 64 Iowa 315. (3) The verdict is so excessive as to imply the existence of prejudice and passion on the part of the jury.

*P. H. Cullen* and *E. S. Gantt* for respondent.

(1) It is universally held by all our courts that ''to fully effectuate the objects contemplated by the adoption of the code, it is essential that the court keep in mind these principles and apply them to particular cases in a spirit entirely in accord with the intent of this legislation. It is evident that a pleading should not now be construed most strongly against the pleader. Its language should be taken in its plain and ordinary

meaning, and such an interpretation given it as fairly· appears to have been intended by its author.'' Stillwell v. Ham, 97 Mo. 585; Warwick v. Baker, 41 Mo. App. 439; Ogelsby v. Mo. Pac., 150 Mo. 154; Loehr v. Murphy, 45 Mo. App. 519; Bricker v. Stone, 47 Mo. App. 530.   (2)   This principle was applied to a very similar state of facts in Ogelsby's case, supra.   Applying these rules to the petition in the case at bar and it simply charges the defendant with negligence in furnishing to plaintiff a defective car.   That is the gravamen of the complaint; the one substantive, issuable fact upon which legal liability is predicated.   The allegation that defendant "built and caused to be built" the car, is an error or defect in the pleading, which the court "shall in every stage of the proceedings disregard" by the imperative command of the statute.   Sec. 659, R. S. 1899.

BLAND, P. J.—It is contended by appellant that its instruction in the nature of a demurrer to the evidence should have been given.   The court so instructed, and it is conceded that appellant's liability is governed by the laws of Iowa, the State where the accident occurred.   Respondent pleaded specially section 2071· of the Iowa Code.   That section reads as follows: ''Every corporation operating a railroad, shall be liable for all damages sustained by any person, including employees of such corporation in consequence of the neglect of the agents, or by any mismanagement of the engineers, or other employees thereof; and in consequence of the willful wrongs, whether of commission or omission of such agents, engineers or other employees, when such wrongs are in any manner connected with the use and operation of any such railway on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding.''

The evidence shows that the respondent was not engaged in the operation of a railway, but in the reconstruction of an old and theretofore abandoned railway track, preparatory to a resumption of its use as a rail-

way. His employment was not to assist in the operation of a railway and his injury was not inflicted by any act of commission or omission of any agent, engineer or employee of the appellant, in any manner connected with the use and operation of a railway. Schroeder v. R. R., 41 Iowa 345; Smith v. R. R., 59 Iowa 73. The fellow-servant act (section 2071, supra) did not furnish the respondent the relief therein provided, nor was the cause tried upon the theory that it came within the provision of that act. In respect to the alleged negligence of the foreman or section boss in permitting the car to be overloaded and in failing to instruct the inexperienced men engaged in the loading of the car, how many rails to put on the car as a proper load, it seems from the Iowa cases that the relation of a laborer and boss or foreman, engaged in the same general service in that State, is that of fellow-servants. In Peterson v. Whitebreast Coal & Mining Company, 50 Iowa 673, the plaintiff was injured through the negligence of Watson, a foreman or boss. The court said: "It does not appear what was the extent of his (Watson's) authority, except as can be inferred from the terms used in defining it. Certain it is that it is not averred he had authority to discharge other employees or that the defendant was negligent in employing him. . . . It makes no difference if the employee receiving the injury is inferior in grade to the one by whose negligence the injury was caused," and held the company not liable for Watson's negligence. The same rule is announced in Foley v. R. R., 64 Iowa 644; Wilson v. R. R., 77 Iowa 429, and Hathaway v. R. R., 92 Iowa 337.

The allegation in the petition is that the appellant was negligent in employing inexperienced men to load and push the car. The evidence is that Tilger was the boss or foreman, under whom the respondent and the other employees who loaded the car worked, and that the car was loaded by his direction and that he was nearby when it was loaded, but there is not a ray of testimony that he was an inexperienced or incompetent man to perform the duty assigned him by appellant.

It was also contended by appellant that the only evidence that the car was defective was the fact that it broke down when overloaded. Standing alone this would not be sufficient proof to authorize a recovery. O'Connor v. R. R., 83 Iowa 105; Kuhn v. R. R., 70 Iowa 566. But there is evidence that the car was made of faulty and insufficient material. A section of the sill of the car which broke and caused the rail to fall upon respondent was produced in court on the trial and submitted to a number of experienced and expert persons as to quality and strength of this particular sill, all of whom testified that it was brittle, had been cut from an old or decaying tree, did not possess more than from one-third to one-fourth the resisting power of a good and sound sill of the same size, and that it was unfit for a sill in a push car. The evidence is all one way, that the car was constructed with faulty material, and that the defect was not perceptible to ordinary observation—the defective sill having been painted on the outside so that the kind and character of the wood was not open to ordinary observation. The law in Iowa, as elsewhere, being that it is the duty of the master to furnish the servants reasonably safe appliances and tools with which to work (Burns v. R. R., 69 Iowa 450; Cooper v. R. R., 44 Iowa 136; Finch v. Ins. Co., 84 Iowa 321), we hold that there was evidence that the appellant had failed to perform this duty and that the case was properly submitted to the jury.

II. It is alleged in the petition that the appellant built and caused to be built, the car at its own shops and furnished it to respondent and other employees to be used in the reconstruction of the railway. Appellant contends that the respondent should be held to strict proof of this allegation that it built the car.

The instructions asked by both parties and given by the court, show that the case was submitted to the jury on the theory that it was the duty of the appellant to furnish the respondent with a reasonably safe push car. For the respondent the jury were instructed that it was the appellant's duty to select the proper mater-

ials out of which to construct the car and if it did not build the car, that it was its duty to make a reasonable inspection of it before putting it in the hands of the respondent. The court instructed the jury at the request of appellant, that if any defective condition of the car could not be discovered by an inspection on the part of appellant or its agents, plaintiff could not recover.

Having tried the case on the theory that appellant was liable if it negligently furnished respondent with a defective car, the appellant will not be permitted on appeal to insist that the respondent should have been held to strict proof of the allegation that appellant built the car at its own shops, the law being well settled that on appeal parties litigant may be confined to the cause of action they adopted on the trial. Hill v. Meyer Bros. Drug Co., 140 Mo. 433; Stewart v. Outhwaite, 141 Mo. 562; Pope v. Ramsey, 78 Mo. App. (K. C.) 157.

John Mitchell testified that he had been in appellant's employ for thirteen years and had charge of its car shops at Moberly, Missouri, and built appellant's push cars, and "supposed he made the car in question," but could not say positively, as he was not at Bussey where the accident occurred; that cars built at appellant's shops were furnished for that division. While this is not direct positive evidence that the car was built by appellant, it was evidence tending to prove that fact, and as appellant did not, as was in its power to do, offer any evidence to show where the car was actually built, or any evidence to show that the car was not built at its shops, it was sufficient to warrant the court in submitting that issue to the jury and to warrant the jury in finding as a fact that defendant did build the car.

III. The appellant contends that the court erred in authorizing a recovery, even though the car was overloaded. The instructions for respondent told the jury in effect that if the car was made of brash and brittle wood and was not reasonably safe for the purposes for which it was being used when loaded with an ordinary load, and for this cause broke down, then the fact that it was overloaded did not absolve appellant from lia-

bility.   Counter to this the jury were instructed for appellant, that if the car was reasonably safe when not overloaded, but was overloaded and broke down from this cause, that respondent could not recover.   Appellant adopted respondent's theory of the law by its counter instruction and can not now be heard to complain of the error, if it be an error, which it adopted and acted upon at the trial.   Berkson v. K C. Cable Co., 144 Mo. 211; Dunlop v. Griffith, 146 Mo. 288; Frankenthal v. Guardian Ins. Co., 76 Mo. App. 15; Marks v. Davis, 72 Mo. App. 557.   But we do not hold the instruction to be erroneous.   In effect it declared the law to be, that if the car was constructed of such weak and faulty wood that it would not bear up under an ordinary load, and that if appellant was guilty of negligence in furnishing it in its weak and unsafe condition and that it broke down from its inherent weakness, but not from being overloaded, then the respondent and his co-employees were not guilty of such contributory negligence as to bar a recovery.   The instruction for appellant, on the other hand, in effect declared the law to be that if the car was overloaded and broke down because overloaded, then respondent was guilty of contributory negligence and could not recover.   In short, it was left to the jury by these instructions, to say whether the car broke down from inherent weakness or on account of the overload.   Whether the car would have broken down under an ordinary load and whether the accident would have happened, is, perhaps, under the evidence, somewhat problematic.   Yet there was evidence tending to show that it was incapable of carrying an ordinary load of steel rails, and we think it was proper to submit the question to the jury.   The other instructions given, correctly stated the law of the case fully and fairly for both sides.   The refused instructions asked by appellant are not supported by the evidence and were properly denied.

IV.   Appellant contends that the damages are excessive.   In support of this contention, our attention is called by its abstract and statement to the fact that on

Mitchell v. Wabash Ry. Co.

the first trial, the verdict recovered by respondent was for nine hundred dollars.

The former trial is not before us for review. The verdict on that trial furnished no precedent for a verdict on the second trial. The evidence of the extent and permanence of the injury may have been much stronger on the last than on the first trial. The time intervening between the two trials, in the course of nature, develop the extent, nature and probable duration of the injury, and furnish the expert witnesses better information and enable them to testify more fully and satisfactorily of the nature, extent and probable duration of the injury.

The trial judge refused to set aside the verdict on account of excessive damages; it therefore had his approval. In such circumstances we are not authorized to interfere unless it is manifest that the jury were actuated by passion or prejudice. The respondent was nineteen years old when injured; he was a laborer, raised on a farm; after the injury he testified that he was unable to plow more than a few hours at a time; he had been lame ever since the injury and was lame at the trial. The injured ankle was enlarged. The expert evidence tended to prove that the sprain was a severe one. One of the physicians stated that there was evidence of injury to the bone. One other said the injury might, and another that he thought it would, be permanent. All agreed that he could not walk in a natural manner, and the evidence was that the ankle joint would for a long time continue weak and easy to be hurt again, and was more liable to disease than a sound ankle. In view of this evidence, we are not prepared to say that the verdict is not the honest expression of the jury of what is a fair and just compensation to respondent for the injury, and affirm the judgment. *Barclay* and *Goode, JJ.,* concur.