W. R. FINK, Appellee, v. DES MOINES ICE COMPANY, Appellant.

1. **Master and Servant:** SAFETY OF APPLIANCES: PERSONAL INJURY: DAMAGES. The plaintiff was employed by the defendant for the purpose of assisting the movement of ice along an ice-slide from the river to an ice-house. The slide was constructed according to the plans, and under the supervision of the officers of the defendant company, and rested upon trestlework made of upright timbers, to which were nailed stringers, cross-pieces, braces and hand rails. On each side of the slide was a foot-board on which the plaintiff and other workmen walked, while pushing the ice toward the ice-house. The cross-pieces were not secured by a sufficient number of nails, but the plaintiff had not had an opportunity of knowing the imperfect construc-

tion of the trestle work until it finally gave way, and he was thrown to the ground while in the performance of his duties. *Held*, that the plaintiff was entitled to recover damages of the defendant for the injuries sustained.

2. ———: ———: FELLOW SERVANTS. The fact that the trestle work in question was constructed by the agents of the common employer, *held*, not to constitute such agents the co-employes of the plaintiff within the rule applicable to injuries occasioned by fellow servants.

3. Personal Injury: DAMAGES: EVIDENCE: INSTRUCTIONS TO JURY. The defendant having introduced evidence of the health, conduct and habits of the plaintiff for some years prior to the accident for the purpose of showing that he had complained before the accident of like disability for the performance of manual labor, *held*, that the court properly instructed the jury that such evidence was material only with reference to the question of the plaintiff's condition of health at the time of the accident.

*Appeal from Polk District Court.*—HON. CHARLES A. BISHOP, Judge.

TUESDAY, JANUARY 26, 1892.

ACTION to recover damages resulting from personal injuries alleged to have been received in consequence of negligence on the part of the defendant. There was a trial by jury, and a verdict and judgment in favor of the plaintiff for one thousand dollars and costs. The defendant appeals.—*Affirmed.*

*Mitchell & Dudley*, for appellant.

*Kauffman & Guernsey*, for appellee.

ROBINSON, C. J.—In February, 1889, the plaintiff was employed by the defendant to assist in filling with ice an ice-house on the west side of the Des Moines river in Des Moines. On the bank of the river was erected a building known in the record as a "dog-house." From the river to the dog-house the ice was drawn up an inclined way by machinery. In the dog-house the ice was projected onto a slide, which reached from the

dog-house westward to the ice-house,—a distance of about one hundred and thirty feet. The slide was about twenty-two feet above the surface of the ground at the dog-house, and, when first completed, sloped downward until it reached the ice-house. As the latter was filled, the west end of the slide was raised from time to time, and when the accident in question occurred a part of the slide, thirty or more feet from the ice-house, was nearly level, while that part next to the ice-house inclined upwards. The slide rested on trestle-work made of upright timbers, to which were nailed stringers, cross-pieces, braces and hand-rails. On each side of the slide was a foot-board, on which the work-men walked. The spaces between the sets of upright timbers or bents was about sixteen feet, excepting between the two nearest the ice-house, which were shorter. The slide was made in sections sixteen feet long by nailing three parallel hardwood strips, two by two inches in size, to cross-pieces, and by fastening on each side a strip, two by four inches in size, placed on edge. The third section from the ice-house was six-teen feet above the ground. Some of the braces with which other bents were supplied were omitted from the two which supported that section, in order to permit the driving of teams between them. The cakes of ice were about twenty-two inches square, and from twelve to sixteen inches in thickness, and each one weighed from one hundred fifty to two hundred pounds. From four to eight of those cakes would be projected onto the slide at one time, with a momentum which carried them some distance along the slide. It was the duty of the plaintiff and other employes to keep the cakes moving in the slide, and, when necessary, to push them into the ice-house. While the plaintiff was push-ing with an ice-pike a number of ice-cakes along the third section from the ice-house, it gave way, and he was precipitated with the ice to the ground, receiving the injuries of which he complains.

I. The plaintiff claims that the slide was not properly constructed, and that the defects were due to negligence on the part of the defendant. There is much conflict in the evidence, but we are of the opinion that the jury were fully justified in finding the claim to be well founded. The trestlework was a temporary structure, designed to be used but a short time each season, and to be taken down after being used. The bents and some other parts were kept from year to year, and repeatedly used, but some parts were renewed each year. The trestlework in question was constructed according to the plans and under the supervision of the officers or managers of the defendant. The evidence tended to establish the following additional facts: The plaintiff was injured while working in the line of duty, without negligence on his part. He did not know the actual condition of the trestlework, and had not had an opportunity to know it. The trestlework was poorly constructed at the place of the accident. It vibrated so much when the ice was passing over it as to loosen the nails with which the cross-pieces and stringers were fastened to the timbers. The cross-pieces were not secured by a sufficient number of nails, and were easily loosened, and finally one or more of them gave way under a moderate load of ice, thus causing the accident. The timbers used were of sufficient strength to have sustained safely weights three or four times as heavy as any to which they were subjected; and the structure could have been made safe by framing and bolting the timbers, stringers and cross-pieces together, or even by using a few more nails in nailing them together, and by proper bracing. A change in the plan of constructing the slide could also have been made with advantage. It was the duty of the defendant to provide and maintain for the use of its employes safe appliances, and to use reasonable diligence to that end. *Cooper v. Central Iowa Ry. Co.*, 44

*1. MASTER and servant: safety of appliances: personal injury: damages.*

Iowa, 136. The evidence submitted authorized the jury to find that the duty specified had not been discharged.

II. Among the defenses set up in the answer was one to the effect that the injuries of which the plaintiff complains were caused by the negligence of his co-employes. The defendant complains of the refusal of the court to submit that issue to the jury. We think its ruling in that respect was correct. The evidence shows that the negligence of which the plaintiff complains was due to an improper construction of the trestlework, and not to any unauthorized alteration made by an employe. Not only did the plaintiff not claim that the accident resulted from the negligence of a co-employe, but there was no evidence to that effect. It was shown that the west end of the slide was raised from time to time, but it was also shown that when it was done steps were taken to guard against the weakening of the structure. It is true that the original construction of the trestlework was by employes or agents of the defendant. As it was a corporation, that was necessarily the case. But the duty to provide and maintain a safe appliance was not one which the defendant could have delegated to its employes in such a manner as to relieve itself from responsibility to the plaintiff for defects which reasonable care would have avoided. The rule in such cases is stated as follows: "It is well settled by all the authorities that the master must provide his servant with a safe place to work in, and furnish him with suitable machinery and appliances with which to perform such work, and it is his duty to keep such machinery and appliances in repair. If he cannot do this himself personally, he must provide some other person to take his place, and the person to whom the master's duty is thus delegated, no matter what his rank or grade, no matter by what name he may be designated, cannot be a servant in the sense

or under the rule applicable to injuries occasioned by fellow servants. Such person is an agent, and the rules of law applicable to principal and agent must apply." *Morton v. Detroit, B. C. & A. Ry. Co.*, 46 N. W. Rep. (Mich.) 113. See, also, *Northern Pac. Ry. Co. v. Herbert*, 116 U. S. 642; 6 Sup. Ct. Rep. 590; *Fuller v. Jewett*, 80 N. Y. 52; *Fay v. Ry. Co.*, 30 Minn. 231, 15 N. W. Rep. 241. The same rule necessarily applies in this case to changes in the structure made by raising the west end of the slide.

III. Plaintiff claims, that, as a result of the accident, his side, left lung and stomach were seriously injured,

3. PERSONAL injury: damages: evidence: instructions to jury.

and offered evidence which tended to show that such was the case. The defendant offered evidence in regard to the health, conduct and habits of the plaintiff for some years prior to the accident, which tended to show a want of capacity for labor. The court charged the jury as follows: "Evidence has been introduced before you as to the condition of plaintiff's health, his habits, * * * his conduct and his ways of life, his efforts to labor and earn money prior to the time of the accident in question. This evidence is material to be considered by you only in connection with the question of the condition of plaintiff's health at the time of the accident, and you will take such evidence into consideration in connection with all the other evidence before you on this subject, including the statements made by the plaintiff in reference thereto, if any are shown by the evidence, and so, from all the evidence before you, determine the fact as to what was the condition of health in which plaintiff was at the time of the accident in question. The plaintiff alleges in his petition, and so testified upon the stand, that at the time of the accident in question he was in excellent health, physically strong, able to do and perform hard manual labor. If, from all the evidence before you, you believe this allegation made by the plaintiff to be

true substantially as alleged and claimed by him, then you are instructed that the question as to what had been his condition of health at any time prior to such accident is wholly immaterial in this case, and need not be further considered by you."

The appellant complains of this portion of the charge, and insists that under the doctrine announced in *Simonson v. C., R. I. & P. Ry. Co.*, 49 Iowa, 92, it was proper for the jury to consider his habits and inclination in regard to earning money. A careful examination of all the evidence satisfies us that the evidence in question was not offered upon the theory now advanced by the appellant, but for the purpose of showing that the plaintiff had complained of his left side, lung and stomach before the accident, and that before it happened he had been unable to perform the manual labor of which an ordinary man is capable, in consequence of the physical infirmities of which he now complains. No issue was made in regard to the inclination of the plaintiff to labor and earn money, and it would be unjust to permit the appellant to insist upon such an issue now. Some of the evidence in regard to the habits of the plaintiff was of a nature to prejudice the jury against him, and the court properly cautioned them in regard to the purpose for which such evidence could be considered. Without reference to the doctrine of the *Simonson case*, we have no hesitation in saying that the portion of the charge under consideration was correct, as applied to the facts in this case.

IV. Counsel for defendant discuss numerous alleged errors, based on rulings of the court in regard to the admission of evidence, the charge of the court and the verdict of the jury. None of them are of sufficient importance to be noticed at length. It is only necessary to say that we have examined all the questions presented with care, but find no error prejudicial to the defendant. The jury might well have fixed a much

smaller amount as that to which the plaintiff is entitled, but the amount allowed has support in the evidence. The judgment of the district court is AFFIRMED.