JAMES CORSON v. THE COAL HILL COAL COMPANY
Appellant.

**Mines:** MASTER AND SERVANT. Where a coal mine has a sloping entrance, through which coal is brought to the surface, its owner owes to an employe riding in the cars through such entry, the duty of exercising such reasonable care to have the roof of the entry sufficiently propped, so that rock will not fall on the track.

SAME. One whose duty it is to ride a "trip" through the main "entry" of a coal mine, for the purpose of signaling the engineer to cut off power in case any of the cars run off the track, is not bound to look after the safety of the entry, since it is an instrumentality furnished for the doing of his work, and a furnishing of it is not a part of his work.

SAME: *Construction of statute.* The provision of McClain's Code, sections 2463, 2465, that if any employe in a mine neglects or refuses to securely prop the roof and entries under his control, he shall be deemed guilty of a misdemeanor, and making it the duty of the agent, owner, or operator, to furnish a sufficient supply of timber to be used as props, and send the same down to the workmen when required, does not apply in a case of an injury to an employe injured in a sloping entry in a coal mine from which coal is brought to the surface, where such employe is not in control of the entry.

*Appeal from Polk District Court.*—HON. T. F. STEVENSON, Judge.

MONDAY, FEBRUARY 8, 1897.

THE plaintiff was an employe of the defendant company, which owned a coal mine operated through a slope, instead of a shaft. The coal was brought to the surface through what is known as an "entry," being an opening from the mouth of the mine, sloping downward gradually for about one thousand seven hundred feet, to what is known as the "second parting." The coal was brought up through this entry on cars, by means of a steam engine at the entrance of the mine, the cars being attached to the drum of the engine by a rope. From the second parting other entries extended into the mine, and to rooms in which the coal was mined, and put into cars that were drawn by mules back to the second parting. At this point the cars were coupled together into trains of nine cars each, called "trips." These trips were, by means of the rope and engine, as we have described, taken to the surface through the main entry, along which a track was laid. It was the duty of plaintiff to ride these trips to and from the second parting. In doing so, he stood with his left foot on the front end of the car, and his right foot on the rope. His duty, when riding, was to watch and see whether any of the cars got of the track, as they were liable to do because of coal or slack falling from the cars on the track. Electric wires extended along the entry, by means of which he could signal to stop the trip, if necessary. On the tenth day of October, 1894, while plaintiff was riding one of the trips, because of slate that had fallen from the roof of the entry, with which the trip collided, he was thrown therefrom, and his leg broken, for the damage of which this action is brought, charging the negligence of one John Hayden, who, it is averred, was in charge of the underground workings of the mine, and under whose supervision plaintiff was at the time. The answer

admits that defendant is a co-partnership and denies other allegations of the petition. It pleads, with other matters, that, if plaintiff was injured by the negligence of another, it was that of a fellow servant, in a way that defendant would not be liable therefor. The issues were submitted to a jury that returned a verdict for plaintiff, and from a judgment thereon the defendant appealed.—*Reversed.*

*Guernsey & Baily* for appellant.

*Earle & Prouty* for appellee.

GRANGER, J.—I. As we have said, the negligence charged is that of one John Hayden, alleged to have been in charge of the under-ground workings of the mine; and the particular negligence charged was a failure to properly prop the roof of the entry, and keep the same in repair, and that he notified plaintiff that it was not in a dangerous condition. Having also in mind, appellant's claim that Hayden was a fellow servant, for whose negligence defendant would not be liable, we may quote the eighth instruction. It is as follows: "(8) You are instructed that there is no question in this case as to the negligence of a fellow servant, for which the defendant would not be responsible, as it was the duty of the defendant to keep the roof of the entry in question in repair, by use of ordinary care and skill, and the evidence shows it was the duty of John Hayden to inspect and keep the said roof in repair; and his lack of care, or his negligence, pertaining to the inspection of said roof, and the keeping of it in repair, is, and would be, the lack of care, or negligence, of the defendant." The complaints as to the instruction, are several, and in one or more respects, we think, appellant misapprehends the legal import

of it.  As we understand counsel for appellant, they
regard the instruction as giving a rule that the
employer must furnish the servant with a safe place
in which to work, and they think the correct rule is
that the employer must use reasonable care to
furnish such a place.  ‘ The latter we understand to
be the rule, and we also understand it to be the rule
of the instruction.  It is said in the instruction, "It was
the duty of the defendant to keep the roof of the entry
in question in repair by the use of ordinary care
and skill."   The instruction also makes the negligence
of Hayden the negligence of defendant, and throughout
the instructions, the liability is made to depend on
negligence in failing to keep the roof in repair, and
they do not fix an absolute liability for such failure.
The liability of the defendant is made to depend, in
part, by averment in the petition, on the fact that
John Hayden was its agent, in such a way, that it was
his duty to keep. the roof in repair and safe for use.
The court told the jury that the evidence showed that
it was his duty to do so.  Appellant urges that the
court erred in that statement, and in this, we think,
appellant is correct.   The evidence is so in conflict as
to make the question one for the jury.  If the testi-
mony of the plaintiff stood alone, it might be
sufficient, but the other evidence does not leave it so
that the court could be permitted to state the conclu-
sion of fact.   James Hayden, a brother to John
Hayden, was superintendent of the mine, and had
charge of the work, inside and out.   His testimony is
as much against the conclusion that John Hayden had
charge of looking after the safety of the entry as
plaintiff's is in favor of it, and he was in a position to
know the fact.   There is nothing in the other evidence
on that point to avoid the conflict.  It is difficult to
present the situation fully, as to the facts, if there is
to be another trial, because of the danger of

prejudice to result from it. It is quite clear to us, that the question as to the character of Hayden's duties should have been left to the jury. Considerable attention, in argument, is given to the rule as to injuries resulting from the negligence of a fellow servant, and to the statement in the instruction that "there is no question in the case as to the negligence of a fellow servant." The expression has led to quite an extended argument and citation of authorities as to when the employer and employe, respectively, is charged with a duty or responsibility to look after the safety of the place where the work is done. We understand it to have been the view of the court below that the plaintiff was not charged with a duty to look after the entry in which he was working, and we concur in that view. It is not as if he had been working in one of the rooms where coal was mined and put on the cars, for there the looking after and keeping safe the room was a part of the work assigned to the miner, and is incidental to his work. It is, as has been said, "a place which a servant makes and occupies as a means of doing his work, or which results as an incident of the work."

3 Again it has been said: "An important consideration, often overlooked, is whether the structure, appliance, or instrumentality is one which has been furnished for the work in which the servants are to be engaged, or whether the furnishing and preparation of it is itself part of the work which they are employed to perform." See *Fraser v. Lumber Co.* 45 Minn. 235 (47 N. W. Rep. 785); *Petaja v. Mining Co.* (Mich.) 66 N. W. Rep. 951. The rule of the instruction applies to a case where a place is furnished for the servant to do his work, and the keeping of the place in repair is not incidental to the work to be performed. In such a case the rule is that the master, or employer,

must furnish a reasonably safe place to work in, and furnish suitable machinery and appliances with which to do the work. *Fink v. Ice Co.*, 84 Iowa, 321 (51 N. W. Rep. 155), and cases there cited; *Haworth v. Manufacturing Co.*, 87 Iowa, 765 (51 N. W. Rep. 68,) and (62 N. W. Rep. 325). The rule is of general, if not of universal application. The undisputed facts of this case bring it within the latter rule, so far as concerns the duties of the parties. The duties of the plaintiff had no concern with the preparation or looking after the entry. It was the general passageway to and from the mine,—a completed work; a place in which work was to be done in no way connected with its construction or preservation. It was a place *for* such work as the plaintiff was doing, and furnished by the employer. This holding is not against that in *Fosburg v. Fuel Co.*, 93 Iowa, 54 (61 N. W. Rep. 400). That case was expressly determined on the rule as to the negligence of a fellow servant. As the work of riding the trip was disconnected from duties as to the roof of the entry in which plaintiff was riding, it was defendant's duty, through a competent person, to look after its safety. The case, as now presented, does not involve a question as to the negligence of a fellow servant.

II. Chapter 21, Acts Twentieth General Assembly, and chapter 140, Acts Twenty-first General Assembly, contain provisions as to "mines and mining." They are included in McClain's Code, from section 2449 to 2482, inclusive. By section 2463 it is provided that, if any miner or person employed in any mine governed by the provisions of the act shall neglect or refuse to securely prop the roof and entries under his control, he shall be deemed guilty of a misdemeanor. Section 2465 makes it the duty of the owner, agent, or operator of any coal mine to keep on hand a sufficient supply of timber to be used as props, so that the workmen may

at all times properly secure the workings from caving in, and the owner or agent must send down such props when required. On the trial, defendant asked instructions to the effect that, if it kept on hand a sufficient supply of timber for props, and sent them down when requested, it was not negligent, and could not be made liable to plaintiff. The thought is that, as to roofs and entries where props are essential to safety, the law fixes the duties of employers and employes; those of the former being to provide the props, and send them down when requested, and those of the latter being to observe the necessity for the props, and call for them. To what extent such a rule should govern, we need not now determine. It may be conceded that, in so far as the law makes the neglect or refusal to do the things required an offense, such neglect or refusal would bar a recovery for injuries resulting from such neglect or refusal; and if we go further, and say that, as to persons within the purview of the acts, the duties of the employer are measured by their requirements, still we do not think the law has application to the facts in this case, because plaintiff was not in control of the entry in which he was hurt, and, under the express language of the act, the offense is only, when the neglect of refusal is by one in control. *Mining Co. v. Clay's Administrator* (Ohio Sup.) 38 N. E. Rep. 610, is thought to support appellant's view, but we do not think so. The statute of Ohio makes any *miner or other person employed* in a mine, who intentionally neglects or refuses to securely prop, etc., guilty of an offense. We notice, however, in reading that case, that the instructions refused by the court, which refusal was said to be error, only sought to apply the law against the plaintiff, if his intestate was in control of the room where he was killed, and then neglected his duty under the law as to propping

it. The instruction asked in that case, was clearly within the provisions of the law. In this case, the instructions asked, would deny a recovery, if the defendant was ready to send down the props on request, without reference to the fact of the person being in control. There was no error in refusing the instructions. We do not discover any other questions that we deem it important to consider, in view of a new trial. The judgment is REVERSED.