## Thomas Blazenic v. The Iowa and Wisconsin Coal Company, Appellant.

**Fellow Servants:** DELEGATED AUTHORITY. A master cannot escape responsibility for the negligent performance of his duty to provide his employe with a reasonably safe place to work in, by delegating such duty to fellow servants of such employe. Under such circumstances, these become the agent of the master.

**Law of the Case:** CONTRIBUTORY NEGLIGENCE. A miner is not, as matter of law, guilty of contributory negligence precluding recovery for injuries inflicted by the fall of slate from the roof of the entry to the mine, merely because he made no attempt to inform himself of the actual condition of the roof, where the instructions say, simply, that he could not recover if, by the exercise of ordinary care, he could have ascertained the dangerous condition of the entry. Such charge left the jury at liberty to find due care, though no such attempt was made.

**Plea and Proof.** An averment that defendant had actual knowledge of a fact does not preclude proof that defendant was negligent, through its failure to exercise ordinary care to know such fact, as such proof would not be inconsistent with said averment.

*Appeal from Monroe District Court.*—Hon. M. A. Roberts, Judge.

### Wednesday, October 6, 1897.

The plaintiff was an employe in the defendant company's mine, engaged in mining coal. While working in the mine in August 1895, he was injured by slate falling from the roof of the mine, and this action is to recover damages sustained by the injury. The petition charges that while plaintiff was wheeling coal through what is known as "Second West Entry" there was a fall of slate from the roof of the entry, by which he was injured. It is charged that the injury was in consequence of defendant's negligence in failing to properly support

the roof of said entry with timbers or otherwise, there being no support of any kind, and that defendant well knew of the dangerous condition of the entry, and had been notified of it. The answer was a general denial. A jury returned a verdict for plaintiff for five hundred fifty dollars, and from a judgment thereon the defendant appealed.—*Affirmed.*

*J. R. Sturdevant* and *T. B. Perry* for appellant.

*L. T. Richmond* and *George D. Porter* for appellee.

GRANGER, J.—I. In the statement of facts it appears that the negligence as charged consisted in failing to properly support the roof of the entry with timbers or otherwise, there being no support of any kind. The petition contained the further averment that defendant had knowledge of the dangerous condition of the roof. The court, in its instructions, permitted the fact of negligence to be found if the roof was actually in a dangerous condition, and the defendant knew it, or by the exercise of ordinary care would have known it. It is urged that the instructions are erroneous because of the statement, that a failure to exercise ordinary care to know of the condition of the roof would be negligence. We do not think the averment as to actual knowledge has the effect of preventing proof of negligence in any other way. The averment as to negligence was complete without the statement as to knowledge, and under it the rule of the instruction would have been proper. The effect of the averment as to knowledge is not to negative the existence of negligence because of other facts. It is not inconsistent with the fact of negligence because of the danger existing for such a time as to raise a presumption of knowledge. The difference is only that between

actual and presumptive knowledge, and the fact that one is averred does not prohibit a showing of negligence because of the other.

II. One McDowell was a miner in the employ of the defendant, and working in a room adjoining the entry where it is claimed the slate fell and injured plaintiff. It is urged that the evidence shows that the slate fell in McDowell's room, and not in the entry, because of which the verdict is contrary to the evidence. The court instructed that, unless the slate fell from the roof of the entry, there could be no recovery. It is true, there is evidence to the effect that the fall of slate was in McDowell's room, but there is also evidence that it fell in the entry. It is likely true that it fell in both places. The jury must have found that it did fall in the entry, and injure the plaintiff, and with that finding we are concluded, in view of the evidence.

III. It is urged that the evidence shows the plaintiff guilty of contributory negligence. This conclusion is based on the fact that the plaintiff, as a witness, testified that he paid no attention whatever to the condition of the roof in the entry; that he did not look at it, or think about it. There is no claim that, with knowledge of the danger, he carelessly exposed himself. It is simply a claim that he made no attempt to inform himself of the actual condition of the roof. It will be remembered that the entry was not the place where he was mining, so that he was in any sense charged with its making or keeping. It was a place provided for the workmen. In *Corson v. Coal Hill Coal Co.*, 101 Iowa, 224, we considered the question of the obligation of a miner as to looking to the safety of such an entry, holding that he was under no such obligation. In this case, however, the court instructed that the plaintiff was bound to use ordinary care to know if the entry

was dangerous. The following is the instruction: "*Seventh.* If you find that the said injury occurred in the entry as claimed, and you also find that the defendant was negligent in permitting the entry to be in the condition it was at the time, then you will inquire and determine whether or not the plaintiff himself exercised ordinary care to avoid the injury, or whether he was in any manner negligent in regard to the same. In determining this matter you will consider the age and experience of the plaintiff, the fact that he was an experienced miner, the length of time that he had worked in the mine, the number of times that he had had occasion to pass under the roof in controversy, what he knew or would have known by the exercise of ordinary care as to the condition of the roof. You will consider whether or not an experienced miner, in the exercise of ordinary care, passing under that roof in the condition in which the evidence shows it was at the time and prior thereto, would have discovered its dangerous condition; whether or not the plaintiff did in fact know, or would by the exercise of ordinary care have known of the condition; what he was doing at the time; you will also consider whether the evidence shows that he knew or had reason to believe that the duty of caring for the roof in the entry rested upon the defendant, and what effect that fact would have upon a person of ordinary skill and prudence in regard to a like matter. These facts, and all other facts and circumstances bearing upon the plaintiff's conduct and knowledge in the premises, you will consider, and from them all say whether or not he was negligent as defined in these instructions. If you find that he was negligent, he cannot recover. If he knew of the dangerous condition of the entry, if it was dangerous, or by exercise of ordinary care would have known it in time to avoid the injury, he cannot recover." It is said that the

instruction becomes the law of the case, which is true, and hence, that because of the testimony of plaintiff, showing that he did nothing to know of the condition of the roof, the fact of contributory negligence appears. The instruction does not specify in what contributory negligence would consist, except that it would be a failure to exercise ordinary care. It is the law that ordinary care did not impose on the plaintiff any duty of inspecting the roof or looking after it. He had the right to assume that exercise of care on the part of the defendant that would keep the roof in a reasonably safe condition; and until he was, in some way, apprised to the contrary, he could, without negligence on his part, act as if the roof were in such condition. We cannot assume that the instruction imposed on plaintiff any other duty, in the exercise of ordinary care, than as the law required. The jury could have said, under the instruction, that ordinary care was what the plaintiff did. The instruction gave no rule of ordinary care inconsistent with such a finding. The experienced miner had the right to treat the entry as safe, in the absence of information to at least put him on inquiry. We may assume that is the care ordinarily used. It was the care used by the plaintiff. It cannot be said that the instruction is to the prejudice of the defendant; nor does it, to justify a recovery by plaintiff, fix a state of facts inconsistent with the rule that the miner is not charged with a duty of looking or inquiring as to the safety of such an entry.

IV. It is said that the duty of inspecting the roof of the entry was imposed on McVey and Shellquist, who were employes of defendant, and that the neglect, if there was any, was theirs, and that, as they were co-employes, there can be no recovery, under the general rule that an employer is not liable for the negligence of a fellow servant. The

rule invoked does not apply to the facts of this case. The negligence charged in this case is in failing to provide a safe place in which to work. In Bishop, Non-Cont. section 647, it is said: "The duty of providing proper appliances is not a thing pertaining to the service, but is the master's own. He may employ agents in discharging it, but the law does not deem them fellow servants, for the consequences of whose negligence he is not answerable to a servant. His neglect of the duty, whether personal or by agent, is his own." The next section applies the same rule to the place provided for work. We approved this rule in *Haworth v. Manufacturing Co.*, 87 Iowa, 765, and cited other authorities. See, also, *Fink v. Ice Co.*, 84 Iowa, 321. In the latter case, speaking of the duty of the master to provide a safe place to work in, it is said: "If he cannot do this himself personally, he must provide some other person to take his place, and the person to whom the master's duty is thus delegated, no matter what his rank or grade, no matter by what name he may be designated, cannot be a servant in the sense under the rule applicable to injuries occasioned by fellow servants." These authorities are decisive of this branch of the case. McVey and Shellquist, if intrusted with such a duty, were agents, to that extent, instead of fellow servants, for whose negligence the company was liable. The judgment of the district court will stand AFFIRMED.