## BIG HILL COAL CO. v. CLUTTS.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1913.)

No. 2,360.

1. MASTER AND SERVANT (§ 88*)—CREATION OF RELATION—EVIDENCE.

Where decedent, at the time he was killed, was working in defendant's coal mine at the request of his grandfather, who, under contract with defendant, had undertaken to mine the coal, and defendant exercised supervision and control over the work and paid decedent's wages directly, the relation of master and servant existed between decedent and defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. § 88.*]

2. MASTER AND SERVANT (§ 118*)—DEATH OF SERVANT—MINES—DANGEROUS ENTRY.

Where decedent, a coal miner, was killed by the fall of a part of the roof of an entry which had been completed and in effect accepted, but not measured nor paid for, defendant owed decedent a nondelegable duty to use reasonable care to keep the roof of such place safe, and was liable for a failure to exercise reasonable care to support the roof after notice that it was dangerous.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 177, 202, 209; Dec. Dig. § 118.*]

3. MASTER AND SERVANT (§ 185*)—INJURIES TO SERVANT—FELLOW SERVANTS.

The fellow-servant doctrine does not apply to an injury sustained by a master's breach of a nondelegable duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*]

In Error to the District Court of the United States for the Eastern District of Kentucky; A. M. J. Cochran, Judge.

Action by J. W. Clutts, as administrator of the estate of Edward Clutts, deceased, against the Big Hill Coal Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Helm Bruce and Grover G. Sales, both of Louisville, Ky. (Wm. Marshall Bullitt, of Louisville, Ky., and Chester Gourley, of Beattyville, Ky., of counsel), for plaintiff in error.

J. M. McDaniel, of Beattyville, Ky., and O'Rear & Williams, of Frankfort, Ky., for defendant in error.

Before WARRINGTON, KNAPPEN and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. [1] Suit was brought in the Lee county circuit court of Kentucky, and removed to the court below, where defendant in error (called herein "plaintiff") recovered a verdict and judgment against plaintiff in error (referred to herein as "defendant"), and error is prosecuted. The action was for wrongful death of plaintiff's decedent and was heard and disposed of upon issues of alleged negligence and contributory negligence. Motion was made at the close of plaintiff's evidence, and again at the close of all the evidence, to direct a verdict for the defendant, and both motions were overruled. The death occurred in the coal mine of the defendant.

The deceased was working at the request of his grandfather, who, under contract with defendant, had undertaken to do the work involved in mining the coal. The answer contained a denial that deceased was in the employ of defendant, but counsel do not appear to have treated this as material, as clearly they could not, because of defendant's assent to the employment through the supervision and control it exercised over the work and its direct payment of decedent's wages. Paducah Box & Basket Co. v. Parker, 143 Ky. 607, 608, 609, 136 S. W. 1012, 43 L. R. A. (N. S.) 179.

The decisive question, and the relevancy or not of decisions relied on by defendant, will be better understood and more easily determined by observing the condition and the surroundings of the place where the accident occurred. The deceased was killed in a cross-entry by the fall from its roof of a block of slate, called a "horse-back." This cross-entry extended from the main entry about 321 feet. Its width was 10 feet except near the head, where it was somewhat wider than usual, which probably had the effect of weakening the roof. The entry was of the ordinary height of 6 feet for a distance of 285 feet from the main entry, and, in consequence of the dangerous condition of the roof, the height of the entry for most of the remainder of the distance was increased and the part taken down removed from the entry, but nothing was done to the portion embracing the "horse-back" and nearest the head of the entry. It was this latter portion that fell and caused the death. Concededly the first 285 feet of the cross-entry had been approved and accepted by the defendant, but not the rest; and the scene of the controversy is within this portion. It is not contended that this was not of the dimensions requisite for approval and acceptance. Approval and acceptance were formally signified by semimonthly payments of wages, and some of the work in the part last described was done after the last pay day. It is undisputed that the work on this part was done, like all the entry work, under the supervision and direction of the mine foreman, Lunce, who testified that he "had charge of the mine." It was under his order and direction that the portion of the roof before mentioned was removed. His attention was also called to the presence of the "horse-back," but he pronounced that part of the roof safe. For all practical purposes all work on this portion was completed, and a track was laid throughout the length of the cross-entry, including the portion in question, and a car put in operation for the removal of coal and slate, before the accident.

[2] The work of driving the entry beyond the end of the track was continued. After removal of the coal for a short distance beyond, a blast was fired in the overhanging slate, which resulted in leaving the débris to be removed; and at the time of the accident deceased was engaged in carrying pieces of this slate to and loading them upon the car. It is a mistake to suppose, as counsel do, that the work deceased was doing, within the space about the car where he was killed, was either opening that place for work or making it safe. It should constantly be remembered that the work of the deceased within that space was simply to use it as a passageway to carry material to the car; and the decisions upon which counsel rely are inapplicable for that reason.

The inquiry at last is whether within the purview of the master's duty this was a safe place to work.

[3] In the solution of this question we concur in and rest our decision on the opinion rendered by Judge Cochran upon his denial of the motion for a new trial; and in thus disposing of the case we stop to say of the claim that the fellow-servant doctrine is controlling (even assuming that the question was raised by exception to the general charge or by request to charge) that it is irrelevant to the doctrine of nondelegable duty. Scendar v. Winona Copper Co., 169 Mich. 665, 669, 135 N. W. 951; Illinois Cent. R. Co. v. Hart, 176 Fed. 245, 100 C. C. A. 49. The portions of the opinion below, which specially bear on the present question, follow.[1] The judgment is affirmed, with costs.

---

[1] The main ground upon which a new trial is sought is that I erred in not sustaining defendant's motion for a peremptory instruction made at the close both of plaintiff's and defendant's evidence. It is claimed that defendant was entitled to such instruction because the defendant owed the decedent no duty to look after the safety of the roof of that portion of the entry which fell and killed him. I do not understand that it is claimed that if defendant owed decedent such a duty there was no sufficient evidence of a breach of that duty to carry the case to the jury.

It is trite in the law of master and servant that the former owes the latter the duty of exercising reasonable care to provide a reasonably safe place in which to work. Mr. Freeman, in his note to Wellston Coal Co. v. Smith, 87 Am. St. Rep. 559, as to the application of this rule to miners says:

"The necessity of this rule and the importance of the duty it imposes is in every case apparent, but in no connection more so than when applied to the relation existing between a mine owner and his employés. The peculiarly hazardous conditions under which the work must necessarily be prosecuted make it of the first importance that the employer be required to use all reasonable means to provide a safe place for its performance and the principle is established by almost innumerable authorities that it is the duty of a mine owner to use all reasonable care and diligence to furnish his employés with a safe place for the performance of their duties."

And in the case of Union Pac. Ry. Co. v. Jarvi, 53 Fed. 65, 3 C. C. A. 433, Judge Sanborn said:

"Obviously, a far higher degree of care and diligence is demanded of the master who places his servant at work digging coal beneath the overhanging masses of rock and earth in a mine than of him who places his employé on the surface of the earth, where danger from superincumbent masses is not to be apprehended. A reasonably prudent man would exercise greater care and watchfulness in the former than in the latter case, and, throughout all the varied occupations of mankind, the greater the danger that a reasonably intelligent and prudent man would apprehend, the higher is the degree of care and diligence the law requires of the master in the protection of the servant."

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

It would seem that if the room in which the miner is digging coal was not all made by him and he has been put to work therein by the mine operator after it has been partially made by other miners, as to the portion then so made the exception has no application. Such portion has been furnished to him by the mine operator and not by himself. This was so held in the case of Western Coal & Min. Co. v. Ingraham, 70 Fed. 219, 17 C. C. A. 71, where Judge Caldwell said:

"Whatever may be the duty of coal miners with reference to timbering the slopes and roofs of the rooms from which they remove coal, the rule is well settled that, after a mine is once opened and timbered, it is the duty of the owner or operator to use reasonable care and diligence to see that the timbers are properly set, and keep them in proper condition and repair."

Of course, where the same conditions exist in other parts of the mine the

exception should apply as much there as it does to the miner's room. Mr. Freeman, in the note heretofore referred to, thus states this exception without reference to whether it applies to the miner's room or elsewhere (87 Am. St. Rep. 566):

"This rule that the mine owner is bound to use all reasonable care to render safe the place furnished by him to the employés is applicable only where the place in which the latter are at work is such that it can be said to be a place furnished by the mine owner. When, therefore, the employés are engaged in making their own place the rule does not apply. Where, for instance, miners are engaged in cutting down or blasting out the face of a drift, it would be entirely unreasonable to demand of the owner that immediately after each blast he make safe the place which the explosion has created. In such case the miners may with reason be said to furnish their own place. The character of the place is continually changing by reason of the work itself. It is, therefore, uniformly held that as to those places which the employé in the progress of his work furnishes for himself it is his duty and not that of his employer to use reasonable care to render them safe for the further prosecution of the work."

The case we have in hand is not a room case and I have considered the law applicable to room cases to ascertain the principles upon which the mine operator owes no duty to the miner as to providing a safe place to work in such cases, to see if they can have any application to the case in hand.

When it comes to entries the general rule that the mine operator owes the miner the duty of exercising reasonable care to provide a reasonably safe place in which to work finds apt application. The following are certain of the cases in which that rule has been applied as to entries, to wit: Union Pac. Ry. Co. v. Jarvi, 53 Fed. 65, 3 C. C. A. 433; Ellsworth v. Metheney, 104 Fed. 119, 44 C. C. A. 484, 51 L. R. A. 389; Parke County Coal Co. v. Barth, 5 Ind. App. 159, 31 N. E. 585; Corson v. Coal Hill Coal Co., 101 Iowa, 224, 70 N. W. 185; Blazenic v. Iowa & W. Coal Co., 102 Iowa, 706, 72 N. W. 292; Wellston Coal Co. v. Smith, 65 Ohio St. 70, 61 N. E. 143, 55 L. R. A. 99, 87 Am. St. Rep. 547.

These are all cases, however, where the entry had been completed and the miner who was injured was using it as a passageway. The difference from the case in hand is that here the entry had not been completed and the decedent was assisting in the work of completing it at the time he lost his life. All the help that can be obtained from these cases, therefore, is in the principles upon which it was held that the general rule applied to them. And the decision of the case in hand must depend upon a consideration of those principles and the principles applicable to room cases as we have found them to be. * * *

* * * It was taken as a matter of course by the mine foreman and the miners concerned that the former could be appealed to by the miners to look after the safety of the roof of the thirty feet and the roof that fell and killed decedent and that upon his being so appealed to he should look thereafter. No question was made as to its being anybody else's place to look thereafter. As soon as Lunce (the mine foreman) became aware of the dangerous character of the roof of the thirty feet, he directed it taken down. When Mink and Clutts, Jr., the next morning doubted the safety of the roof that fell and they so informed him, he went at once and examined it and pronounced it safe, and in the afternoon of his own accord he again examined it. * * * Before decedent went to work that night and after Lunce had examined the roof that fell in the morning the latter assured decedent through his father that the roof was safe. His father had spoken to him the afternoon before, evidently at decedent's instance or because of information obtained from him, concerning the safety of the roof. Did or not the defendant then in view of all these considerations owe decedent as to the roof that fell and killed him the duty of exercising reasonable care to see that it was reasonably safe? In the case of Taylor v. Star Coal Co., 110 Iowa, 40, 81 N. W. 249, Judge Deemer said:

"In the case before us (it being an entry case) the general rule, no doubt, is that the master must provide the servant with a safe place to work; but,

as the servant is from time to time making that place for himself, the law does not fix the exact time when his duty to look after himself ceases, and that of the master begins."

But are not the facts and circumstances of this case such that the law fixes that the duty of defendant to look after the safety of the roof that fell and killed decedent had begun before he placed himself in danger thereof? I think they are. It seems to me that in view of the fact that the law itself irrespective of the particular circumstances of a case does not fix the exact time when the duty of the miner to look after his own safety in an entry case ceases and that of the mine operator begins, it should be held that when in a particular case the miner turns the matter of looking after the safety of the place over to the mine foreman and the latter accepts it the duty of the miner has ceased and the duty of the mine operator has begun. Possibly the law as to the duty of the mine operator to exercise reasonable care to provide the miner a reasonably safe place in which to work may be summed up in this way. The mine operator owes this duty except where it is the reasonable expectation of the parties that the miner himself shall look after his own safety. Generally speaking, such is the expectation where he is working in his room digging coal and hence the mine operator does not owe him such duty. On the other hand, generally speaking, it is not the reasonable expectation that the miner shall do so as to an entry and hence there the mine operator does owe him such duty. But where the miner is engaged in driving or assisting in driving the entry it is the reasonable expectation of the parties that whilst he is so doing, as to the portion of the entry that is being driven, that he shall look after his own safety, and hence the mine operator does not owe him such duty in regard thereto. It is possible that this may be the case not only as to the portion of the entry which is being driven but also as to the portion which the miner is using in driving or assisting in driving such portion or even as to so much of the entry which has not been measured, accepted, and paid for, even though it may be of the required width and height. But if it is a part of the modus operandi that the miner may direct the mine boss' attention to the portion he is so using or which has not been measured, accepted, and paid for as calling for care, in which case the mine boss is to look after its safety, it is certainly not the reasonable expectation of the parties that the miner shall thereafter look after its safety. Particularly is this not the case when the mine boss, after having his attention so directed, cares for the safety thereof and assures the miner that it is safe. Where this is the case the duty of the mine operator as to providing a safe place should apply in full force. And in the case we have here, an authority somewhat in point and more like in fact to the case in hand than any I have found is the case of Kelley v. Fourth of July Min. Co., 16 Mont. 481, 484, 41 Pac. 273.

There a miner was engaged in running a tunnel by drilling and blasting from its face. He threw the rock he blasted from the face of the tunnel behind him and it was removed by another man. The dirt and sand had been dropping from the roof behind him. To prevent this the foreman had caused two half sets of timbers to be placed in the tunnel, the miner assisting in the work. The day before the accident the miner under the directions of the foreman put in a stull (an arching of boards) for the same purpose. The foreman was in the habit of examining the work every afternoon and had assured the miner that the roof was safe. The afternoon before the accident the miner had called the foreman's attention to the accumulation of rock, dirt, and débris behind him and the difficulty of crawling over it to get out and the foreman had promised to have it removed but had not done so. The next morning whilst at work throwing back the dirt and rock blasted from the face the afternoon previous the miner heard the timbers creaking and noticed the fine dirt falling from the roof. He made a jump to get out, but was caught by the falling dirt and timbers and was injured. It was held that the defendant was liable. Pemberton, J., said:

"In this case the court instructed the jury that 'it was the duty of the defendant to adopt all reasonable means and precautions to provide a safe place for the plaintiff in which to prosecute his work.' The defendant assigns this

as error. Counsel for the defendant contends that, while this instruction states the law in ordinary cases, it is not applicable to this case. His contention is that the plaintiff was not working in a place, but was working in the creation of a place. The evidence in this case is that the plaintiff was employed, at the time of the accident, in running a tunnel in defendant's mine. He was doing this work under the immediate supervision and direction of John Sheehan, the foreman and manager of the mine. Sheehan was not working in the mine with plaintiff. The plaintiff was not engaged in creating a place, on his own judgment, and at his own risk. He assumed the risks naturally attendant upon driving the tunnel. It was the duty of the defendant to keep that part of the tunnel or place already created safe, by whatever reasonable means were necessary. If the plaintiff had been injured while in the actual work of drilling or blasting in the face of the tunnel he was driving, he may have had no claim on the defendant for damages; for these were risks he assumed as a miner. But he did not assume the risk of defendant's failure to keep that part of the tunnel or place already created reasonably safe and secure. For instance, if a stone or material blasted or dug from the tunnel by plaintiff should have been blown against, or should have fallen upon him, he would have had no remedy against defendant for any injury sustained thereby. This is a risk belonging to his employment and which he assumed. But he did not, by his employment as a miner in driving the tunnel, assume the risk of the failure of the defendant to take such reasonable precautions as were requisite to prevent the caving and falling of the roof of that part of the tunnel already created, upon him while engaged in this work. Nor did he assume the risk of the failure of the defendant to keep the floor of the tunnel so free from rock and débris as not to materially hinder or obstruct his escape from his place of work, in case of accident, such as occurred in this case, or might occur by premature or unexpected explosions * * * of the risks incident to the work in front of him, and not the risks of the defendant's failure to properly care for that part of the tunnel or place behind him, which he had completed, and turned over to the care and control of the defendant. The authorities cited by the defendant's counsel, we think, are not applicable to the case at bar. The conditions and facts in the cases cited are dissimilar from those in this case. We do not think that the plaintiff, at the time he was injured, was engaged in creating a place, or rendering a dangerous place safe, within the meaning of the cases cited by defendant's counsel."

The defendant relies mainly on the case of Finalyson v. M. & M. Co., 67 Fed. 507, 14 C. C. A. 492, and thinks that it is decisive of this. But I do not think so. It is true that that was an entry case. But there the miner who was killed and for whose death the suit was brought, was employed along with others in making safe a portion of an entry that was known to be dangerous and was killed by reason of its unsafety. Hence it comes within the well-recognized limitation upon the general rule above referred to that where the servant is expressly employed to look after the safety of a certain place or it is the reasonable expectation on his part and that of his master that he shall do so there the general rule does not apply. A case decided by the same court in which the same limitation was applied as to a station in a mine which the miner for whose death the suit was brought was engaged with others in putting in a safe condition is that of Moon Anchor Consol. Gold Mines v. Hopkins, 111 Fed. 298, 49 C. C. A. 347. I think these two decisions are sound, but it is to be noted that Judge Caldwell in the one case and Judge Thayer in the other, both able judges, dissented.

Here the nature of decedent's employment was not to make any dangerous place safe. He was engaged in a dangerous work in the sense that all mining is dangerous. But he had nothing to do with putting the roof of the portion of the entry that had been completed in a safe condition and he was not engaged in so doing when killed. What he was doing was using the entry that had been completed, i. e., made of the required width and height, for the purpose of placing the slate which he had removed from that which had been shot down in the car. He was not at work on the portion of entry whose roof fell. It had been completed two days before. Defendant had ample opportunity to inspect it and place it in safe condition. He had inspected it

and had assured decedent through his father that it was safe before he placed himself in danger.

The case of Citrone v. O'Rourke Eng. Co., 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A. (N. S.) 340, is not applicable. There the plaintiff and others were engaged in creating a place and were injured by the unsafety of the place they were creating. The case of Smith v. North Jellico Coal Co., 131 Ky. 196, 114 S. W. 785, 28 L. R. A. (N. S.) 1266, is a mine case, but a room case, and has been much weakened by the later case of Williams Coal Co. v. Cooper, 138 Ky. 287, 127 S. W. 1000. No one of the cases cited and relied on is similar or substantially so to this case in its facts. The case of Deye v. Lodge Tool Co., 137 Fed. 480, 70 C. C. A. 64, has no application. It is a case where the place of work of a servant was made unsafe by the negligence of a fellow servant in matter of operation. A similar case to this, in which I delivered the opinion on behalf of the Sixth Circuit Court of Appeals, is that of Pennsylvania Co. v. Fishack, 123 Fed. 465, 59 C. C. A. 269.

Point has been made of the fact that the accident took place in that portion of the entry, which though completed, i. e., of the required width and height, had not been measured, accepted and paid for. It remains to consider the significance of this circumstance. There is some contrariety in the evidence as to when the entry is finished. According to plaintiff's witnesses it is finished whenever it is made of the required width and height; and according to defendant's when measured and accepted. The difference is due to the different senses in which the word "finished" is used. The witnesses of the one mean actually finished and those of the other when accepted as finished. Both are right. There is also some contrariety as to whether the miner has to post the portion of the entry which has not been measured and accepted, though the evidence of the defendant to the effect that he has to is not very persuasive. It is not necessary to take issue with it here. For it is apparent from the evidence of both sides that whenever the mine boss' attention was called to any danger in the roof of the entry, whether measured and accepted or not, he was expected to look after its safety. That was what happened as to the roof of the 30 feet and the roof that fell. Lunce's attention was called to the dangerous character of the roof in both places. He inspected each at once when his attention was called thereto. He directed that of the 30 feet to be taken down, that which had been measured and accepted and that which had not been, and pronounced the other safe and told Mink and Clutts, Jr., and decedent through his father to go ahead with their work. * * *

When I charged the jury, my recollection of the evidence was not such that I was clear that it had been established beyond question that the portion of the roof which fell was a part of that which Lunce had undertaken to care for. I had had such difficulty in comprehending the modus operandi that what the evidence actually showed on this point had escaped me. Hence I left it to the jury. It is clear from the reading of the evidence that Lunce had undertaken to care for the safety of this portion of the roof as well as that of the 30 feet, though he did no more than examine it and determine as to its safety. * * *